THE ARKANSAS VALLEY TOWN AND LAND COMPANY
v. H. S. LINCOLN.

No. 7740.

1. TOWN COMPANY — *Contract to Remove Established Business —
   Avoidance.* Where a town company induced L. to remove his
   store building and stock of goods at great expense from a village
   a short distance to a new town site, by a contract of guaranty,
   made by its general agent in the usual way, that a railroad would
   be constructed and in operation to the town site within a given
   time, such company cannot be relieved from liability for a breach of
   the contract on the ground of the want of power to make it, nor be-
   cause the board of directors did not formally confer authority on
   the general agent to enter into it.

2. CONTRACT, *Construed.* Upon the evidence, *held*, that the con-
   tract included the guaranty that the railroad would be built
   within a given time.

3. —— *Breach — Measure of Damages — Profits — Evidence.*
   In a contract of the nature above stated, where both parties con-
   templated the breaking up of an established business at such
   village, assuming that the new location would become the railroad
   town, and the contract of guaranty is broken, the railroad never
   being constructed, and the new town site and L.'s business there
   having failed, *held*, that, in an action by L. against the town
   company to recover damages for a breach of the contract of
   guaranty, L.'s loss of profits of his established business was
   properly taken into consideration in connection with other things
   in estimating the measure of his recovery.

*Error from Chase District Court.*

THE plaintiff in error (defendant below) was char-
tered as a corporation June 29, 1885, its purposes being
the purchase and sale of real estate for the benefit of
its members, the purchase, location and laying out of
town sites, and the sale and conveyance of the same
in lots and subdivisions or otherwise, and the erection
of buildings and other improvements thereon, and
such acts as might be deemed necessary and desirable
to the proper and advantageous management of its
business, the places thereof being at Topeka, Kan.,

10—56 KAS.

Boston, Mass., and such other places in the states and territories of the United States as might, from time to time, be deemed desirable along or near the line of the Atchison, Topeka & Santa Fe railroad, or its leased, operated, connecting or auxiliary lines. This corporation was on intimate relations with the Atchison, Topeka & Santa Fe Railroad Company, some of its officers being also officers of the railroad company, and its general office was in the building of the latter company, at Topeka. Prior to April, 1886, an auxiliary road had been projected, known as the Emporia & El Dorado short line, extending from a point on the main line, in Chase county, southerly to a point called Richards, where a town site was located within a mile of Matfield Green, a small town in said county. The defendant in error (plaintiff below) resided at the latter place, and had a general store and some other property there. In April, 1886, W. G. Dickinson, the general agent of the town and land company, called upon Lincoln at Matfield Green, and entered into negotiations to induce him to remove his store and place of residence to Richards, which was then nothing more than a paper town site, consisting of farming lands. In June following, at request of Dickinson, Lincoln visited the latter at his office in Topeka, and it was orally agreed that Lincoln would remove his store building and stock to Richards, the town company to pay $250 toward the expense thereof; that Lincoln should be the local agent of the town company at Richards for the sale and donation of lots, and to induce settlement upon the town site especially by the residents of Matfield Green, and that 11 lots for business and residence purposes should be conveyed to Lincoln, the town company agreeing that the railroad should be built, equipped, completed and in operation to Richards

by September 1, 1886. At this interview and before, Dickinson was fully informed of the extent and character of the business transacted by Lincoln at Matfield Green. Thereafter, on June 28, 1886, Lincoln wrote a letter to Dickinson, in order that they might understand each other, in which he stated what each proposed to do; but he omitted all mention of the railroad. On June 30, Dickinson answered Lincoln's letter, urging him to move at the earliest practicable moment, and push things as rapidly as possible, and that he could rest assured that the railroad would be built and in operation as stated in the conversation at Topeka, and that he would deed the lots as soon as Lincoln was on the ground; and on July 2, 1886, Dickinson sent to Lincoln an appointment as local agent at Richards. There was considerable correspondence between Lincoln and Dickinson until the latter was succeeded in office by R. M. Spivey, about August 1, 1886, when the same was renewed between Lincoln and Spivey. About July 17 to 19, 1886, Lincoln had a conversation with Dickinson, in which he told the latter he could not go on with the matter unless he had positive assurance that the railroad would be built to Richards that fall, and thereupon Dickinson said they would guarantee that the railroad would be built to Richards that fall, and for him to go ahead. Lincoln did not get his store removed and completed until early in September; but he did what he could to induce people in and about Matfield Green to establish themselves at Richards, with only a small degree of success. His stock was of about $12,000 in value. For the last two or three years of the business at Matfield Green, Lincoln had sold about $30,000 worth of goods annually, at a profit of 10 per cent. His store was at Richards about a year, when all hope of

the early completion of the railroad to that point was abandoned, and he gave up the enterprise, having sold about $5,000 worth of goods during the year, but without any profit. The cost of removal of the building and stock was about $500, and the building was depreciated in value to the extent of $500 to $1,500. The town company deeded the lots to Lincoln, and also paid $250 on the cost of removal, as agreed upon. The railroad was never completed to Richards, but stopped at Bazaar, about eight miles north of Richards.

The original action was commenced by Lincoln to recover damages in the sum of $8,700 on account of the breach of the agreement of the town company for the completion of the railroad to Richards. A trial before the court and a jury at November term, 1890, resulted in a judgment in favor of Lincoln for $3,-791.66 damages and $134.74 costs. The defendant company brings the case to this court.

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for plaintiff in error.

*Madden Bros.,* and *Waters & Waters,* for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J. : I. The first question concerns the validity of the contract of guaranty that the railroad would be completed to Richards, and this includes the power of the town company to enter into such a contract, and the authority of the general agent to bind the corporation. If the corporation had no right to build a railroad, yet, as a means of promoting its own interest, it might contract with a railroad company for the extension of its road to or through the town

site, and aid it by the donation of town lots or money. (*Whetstone v. Ottawa University*, 13 Kan. 320, 340 ; *Fulton v. Land Co.*, 47 id. 621.) And if, in order to induce settlement, the town company should guarantee that the railroad would be built, and a person relying thereon should be induced to settle upon the town site at great expense, it could not be relieved of its obligation on the plea of want of power ; (*Town Co. v. Morris*, 43 Kan. 282, 284, and cases cited ; *Town Co. v. Russell*, 46 id. 382 ; *Mound City v. Snoddy*, 53 id. 126 ;) nor could it escape liability on the ground that the board of directors failed formally to confer authority on the general agent to enter into the contract, (*Town Co. v. Swigart*, 43 Kan. 292,) especially where it is customary for such agent to make and the corporation to act upon such contracts. (*Durham v. Mining Co.*, 22 Kan. 232, 244 ; *Building Association v. Martin*, 39 id. 750.) Spivey testified that it was the custom of the general agent to make contracts to induce parties to locate upon the town sites, and to use his judgment and discretion as to the terms and conditions of such inducement, and that he made a large number of such contracts, and had authority to do so.

II. The town company claims that the letters of June 28 and June 30, respectively, constitute whatever contract was made by the agent with Lincoln ; and, as the latter said nothing about the railroad in his letter, there was no contract of guaranty of its completion. These letters can scarcely be said to embrace the full terms of the contract, for in that of the general agent to Lincoln he asks him to rest assured that the railroad would be built and in operation, as stated to him when he was at Topeka, which indicates that Lincoln had not covered the whole subject in his letter. Besides, the main, if not the only, in-

ducement to Lincoln to remove his store from Matfield Green, where he had a well-established business, to the new town site a mile away, was that Richards was to be the railroad town; and on the heading of the letter of June 30, by the general agent, as well as on all others written by him, was the following heading: "Arkansas Valley Town and Land Company. Town Property on the Line of the Atchison, Topeka & Santa Fe Railroad and Auxiliary Lines." There can be no doubt, upon the evidence, that the contract included the guaranty that the railroad would be built to Richards, if not in September, at least in the fall of 1886.

III. The evidence and the instructions of the court as to damages are complained of. When the contract was entered into, both parties were fully cognizant of the situation. The success of Richards contemplated the downfall of Matfield Green, and neither was possible without the building of the railroad to the former place. With the railroad, Richards was to blot out Matfield Green; without it, no business could be established there. By the procurement of the general agent, Lincoln placed himself in a hostile attitude to Matfield Green, so that a failure at Richards, which must be inevitable without the railroad, involved the ruin of an established and profitable business. This brings the case within the rule of *Hadley v. Baxendale*, 9 Exch. 341, decided in 1854, Baron Alderson stating the same, as follows:

" Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed

to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.''

The damages by the breaking up of Lincoln's established business at Matfield Green were not as difficult nor as uncertain of measurement as those in the cases of *Hoge v. Norton*, 22 Kan. 374, 379, and *Brown v. Hadley*, 43 id. 267, 271, nor as some others that might be mentioned. (*Heatwole v. Gorrell*, 35 Kan. 692, 699.) Sedgwick, in his work on Damages (8th ed.), section 182, says:

'' Where it clearly appears that the defendant has interrupted an established business, from which the plaintiff expected to realize profits, the plaintiff should recover compensation for whatever profit he makes it reasonably certain he would have realized. Here, as elsewhere, the question is one of fact; whether the profit can be proved with reasonable certainty.''

And he cites the case of *Chapman v. Kirby*, 49 Ill. 211, 217, 219, where the court says:

''And to measure such damages, the jury must have some basis for an estimate, and what more reasonable than to take the profits for a reasonable period next preceding the time when the injury was inflicted, leaving the other party to show that by depression in trade or other causes they would have been less? Nor can we expect that in actions of this character the precise extent of the damages can be shown by demonstration. By this means they can be ascertained with a reasonable degree of certainty.''

We think it was proper for the jury to take into consideration the loss of profits incurred by Lincoln in the breaking up of his established business at Matfield Green. In a projected business the loss of profits is often merely conjectural, and not the subject of any reasonable measurement. (Sedg. Dam. § 183.) Such was the case in *Town Co. v. Leonard*, 46 Kan.

354, 357, 358, and an exact rule of damages was there available, namely, the cost of removing the hotel to Sherman Center, and placing it over a cellar of equal size and a foundation of similar kind as it was then resting upon in Itasca.

Finding no material error in the record, the judgment will be affirmed.

All the Justices concurring.