No. 20,573.

DOLLY MURRAY, *Appellee*, v. THE EMPIRE DISTRICT ELECTRIC COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Releasing Impounded Water—Death by Drowning— Trial—Instructions*. It is not error to refuse to submit to the jury special questions which assume as established facts about which the evidence is contradictory or which ask for immaterial answers that can be used only as the basis for argument in determining what the material facts are.

2. SAME—*Instructions*. It is not error to refuse to give requested instructions where they are given in other instructions substantially as requested, nor to modify requested instructions so as to make them correctly state the law.

3. SAME—*Instructions Relating to Established Facts*. Where facts are conclusively established by the evidence or are admitted by the parties on the trial, it is not reversible error for the court to refuse to instruct the jury that such facts are established or admitted, where the court gives to the jury an instruction directing the jury to take into consideration the evidence to establish such facts.

4. SAME—*Instructions—Repetitions*. In instructing the jury, it is not error for the court to repeatedly state material facts, where undue prominence is not given to them, and where the issues can not be properly submitted to the jury without such repetition.

5. SAME—*Instructions*. A judgment will not be reversed for the reason that a part of an instruction may be subject to criticism, where that-

part is controlled and governed by another part of the same instruction in which the law is clearly and correctly stated.

6. SAME—*Instructions—Positive and Negative Evidence.* The rule concerning positive and negative testimony was correctly stated in the instructions.

7. SAME—*Instructions—Taken as a Whole.* Where it is error to give to the jury the rule of *res ipsa loquitur* concernig one alleged negligent act, if the rule can not apply to a different negligent act found by the jury, and if it appears from the whole of the instructions that the jury could not have been misled thereby, the judgment based on the verdict and findings will not be disturbed.

8. SAME—*Formation of Jury—No Error.* A judgment will not be reversed for irregularities in the formation of the jury, unless it appears that the party complaining was prejudiced thereby, following *Hanson v. Kendt,* 94 Kan. 310, 146 Pac. 1190.

9. SAME—*Trial—No Reversible Error.* Other matters complained of have been examined and are held not sufficient to warrant a reversal of the judgment.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed January 6, 1917. Affirmed.

*Andrew S. Wilson,* of Galena, and *A. E. Spencer,* of Joplin, Mo., for the appellant.

*C. A. McNeill,* of Columbus, *Maurice McNeill,* of Kansas City, Mo., and *C. V. Buckley,* of Joplin, Mo., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff obtained judgment against the defendant for wrongfully causing the death of her husband, J. A. Murray. The defendant appeals.

The defendant operated a dam across Spring river near Lowell, in Cherokee county. The dam was used for impounding water to generate electricity, and was about thirty feet high and four hundred feet long. It held an effective head of water twenty-four feet high. The water operated eight large turbine wheels, and was released through eight openings in the dam. J. A. Murray drove a team and wagon into the stream at Dardene ford, and was drowned by a flood of water which the defendant had released through the openings in the dam. This ford was ten miles below the dam, following the course of the river. The manner in which the water was re-

leased on the day of the accident was not disputed; but the evidence as to the effect of the release of the water was contradictory.   The plaintiff alleged, and introduced evidence tending to prove, that J. A. Murray's death was caused by the negligence of the defendant in releasing water from the dam, and by its failure to warn Murray of the approaching flood of water.   Two defenses were set up—one a general denial, and the other contributory negligence on the part of Murray.   The jury made findings of fact as follows:

"1.  What is the distance by the river from the defendant's dam in going to the ford in Oklahoma where the plaintiff's husband was drowned?  Answer: About ten miles.

"2.  What was the distance in feet across the river at the ford when the river was at a fordable stage?  Answer: About 240 feet.

"3.  Did defendant operate its dam on the 26th day of February, 1914, in the usual manner?  Answer: Practically so.

"4.  If you find for the plaintiff in this action, then state what particular act or omission on the part of the defendant, its agents or representatives, caused the death of plaintiff's husband.'  Answer: Negligence by not giving warning or .signal of sudden rise of water.

"5.  What was the time of day or hour that plaintiff's husband was drowned?  Answer: From one to two o'clock p. m.

"6.  If you find for the. plaintiff in this action, then state how the water was let out of the dam, which you find caused the death of plaintiff's husband.  Answer: Through the turbines.

"7.  What negligence, if any, do you find caused the death of plaintiff's husband?  Answer: By not giving warning.

"9.  What is the distance from the Village Ford, mentioned in the testimony, to Lincolnville?  Answer: About two miles.

"10.   What is the distance from Lincolnville to the Dardene Ford in Spring River?  Answer: About three miles."

1.  The defendant insists that the court erred in refusing to submit to the jury the eighth special question requested by the defendant, which question was as follows:

"8th.  If you find witnesses Kelley and Overton who have testified by deposition, drove to the ford with loads of wood and decided the water was too deep to ford safely, then state the time of day this occurred."

Witnesses Kelley and Overton testified, in substance, that they went to the ford to cross it about noon; that they found the river rising and so high that they thought it not fordable; that they went away, and returned again about three o'clock in the afternoon; that on their return they learned that a man had'been drowned and saw the wheels of a wagon in the river;

and that they did not see the wheels when at the ford about noon. The defendant's contention of contributory negligence is based on the assumption that when Murray reached the ford the river was too high to be crossed with safety. Murray was familiar with the ford and knew when he could safely cross. The defendant contends that Murray either carelessly drove into the high water, or deliberately drove in, knowing that it was high. The defendant argues that if the jury had been requested to answer question number eight, the answer would have shown that the river was too high to ford when Murray reached it. The question assumes that there was no dispute about Kelley and Overton's having reached the ford previous to the time that Murray undertook to cross the river, and assumes that Murray's wagon was not in the river at the time Kelley and Overton first reached the ford. They may have been mistaken as to the time when they first arrived at the ford. They had no watch, and guessed at the time. Murray may have been drowned previous to that time. The assumptions contained in the question justified the court in refusing to submit it. If the question had been answered as the defendant probably anticipated, the answer would not have determined that the river was too high to ford with safety when Murray reached it. At best, such an answer would have been but the basis from which to argue that the water at the ford was then too high to be crossed. If the defendant desired the jury to determine whether or not the ford was dangerous when Murray reached it,' a direct question to that effect should have been asked.

2. Defendant complains of the refusal of the court to give the following instruction concerning the evidence to establish contributory negligence:

"You must consider all the evidence offered by the plaintiff as well as by the defendant, for evidence introduced on the part of the plaintiff which tends to show that said J. A. Murray was guilty of negligence which contributed to his death, that is to be considered by you the same as though it was introduced by the defendant, and is to be considered along with the evidence by the defendant."

The complaint of the instruction given is:

"That the court did not tell the jury that they were to consider on this subject the evidence offered by the plaintiff as well as by the defendant,

or that if there is evidence introduced on the part of the plaintiff which tends to show that Murray was guilty of negligence which contributed to his death, it was to be considered the same as if introduced by the defendant."

The language used in one of the instructions given—"If it appears from the whole of the evidence that the plaintiff was guilty of contributory negligence,"—is as broad as that requested by the defendant. In another instruction on the question of contributory negligence, the court said to the jury, "You will have to take into consideration all the evidence introduced by both plaintiff and defendant," and in still another instruction, that "whether the deceased was exercising such ordinary care, is a question for you to determine from all the evidence in the case." The court gave the jury the substance of all that the defendant requested on this subject.

The defendant complains of the refusal of the court to give an instruction requested concerning the right of the defendant to maintain and operate the dam. On this matter the court instructed the jury as follows:

"7th. You are further instructed that the defendant had a right to build, maintain and operate a power dam at Lowell, Kansas, 'and the fact that it did build such dam and penned and held back large quantities of water and that it released water therefrom in quantities that might be dangerous would not alone make it liable for injuries provided it used a degree of care in so releasing such water commensurate with the danger it had created, if any.'"

This was as the defendant asked that the instruction be given, except that the word "alone" was not in the instruction requested. That word was added by the court. That change was the only one made. The defendant complains of the use of the word "alone" in the instruction given. If that word had been left out, the instruction would have been misleading and probably erroneous, as against the plaintiff.

There was some evidence to show that the deceased was reckless. The defendant requested an instruction as follows:

"16. In determining whether plaintiff's husband, J. A. Murray, was guilty of negligence which contributed to his death in attempting to ford the river, you should take into consideration whether or not he was a man of a reckless character."

The court embraced this matter in an instruction given to the jury in the following language:

"14th. And the question whether the deceased was so exercising such

ordinary care is a question for you to determine from all the evidence in the case. . . . The fact of his being a careful or prudent or a reckless disposition and, in fact, any fact disclosed by the evidence which tends to throw any light upon this question."

The defendant complains of the refusal of the court to instruct that the plaintiff could not recover if Murray attempted to cross the river when it was not at a fordable stage. This goes to the question of contributory negligence, which was properly submitted to the jury in other instructions.

3. It was established and admitted on the trial that Murray was familiar with the ford and with the marks that indicated the stage of the water. The defendant complains of the refusal of the court to instruct the jury that Murray was familiar with the water marks. This proposition was submitted to the jury in the following instruction:

"The evidence does not show that there was any witness who saw J. A. Murray, plaintiff's husband, when he attempted to ford the river or who saw him drowned. Under these circumstances, in determining whether or not he was guilty of negligence which contributed to his death in attempting to ford the river, you will have to take into consideration all the evidence introduced by both plaintiff and defendant, including evidence on the question as to whether or not he was familiar with the ford and with the marks or objects by which persons who were familiar with the ford determined when it was fordable or safe to attempt to ford the river."

This instruction did not state that it was an established or admitted fact that Murray was familiar with the ford and with the marks which indicated the stage of the water; but the instruction did tell the jury that in determining whether or not Murray was guilty of contributory negligence the evidence of his familiarity with the ford and with the marks must be taken into consideration.

4. The defendant complains of the number of times the court referred to the failure of the defendant to give notice of the release of water to those desiring to cross the river at any of the fords below the dam. This proposition was repeated a number of times in the instructions. The defendant insists that undue prominence was given to this matter and that the jury were misled thereby. The questions at issue could not have been correctly submitted to the jury without repeating the statement concerning the want of notice. These repeti-

tions in the instructions given were so framed that no undue prominence was given to that one fact.

5. Expert witnesses testified concerning the flow of the water below the dam. The court instructed the jury concerning this evidence. The defendant complains of this instruction. Part of the instruction may be subject to criticism. The closing paragraph of the instruction was as follows:

"You are not bound to adopt their views nor to take their judgments or opinions as conclusive, and if improbable or unreasonable you may ignore the same, but should give their testimony such weight, under the conditions and circumstances existing, as in your judgment it is fairly entitled to receive at your hands."

This gives a correct statement of the law concerning evidence of this character. The language quoted was such that it controlled and governed the language of which complaint is made. The instruction was not prejudicially erroneous.

6. The court instructed the jury concerning positive and negative testimony. The defendant insists that this instruction was erroneous. The instruction has been examined. It correctly stated the law, and there was evidence sufficient to justify the court in giving the instruction.

7. Another complaint is of the sixteenth instruction, a part of which was as follows:

"I instruct you, however, that while, as I have just said, negligence must be proved, it is the law of this state that it may be inferred, when the thing causing an injury or death is in the exclusive management and control of the one charged therewith, and the occurrence is such as in the ordinary course of matters does not happen, if those having the management and control use proper care."

This instruction, if applicable at all, was applicable only to negligence in releasing the water. The instruction had nothing whatever to do with notice or warning. The jury found that the negligence of the defendant consisted in not giving warning. It can not be said that this instruction influenced the jury in reaching its verdict. The verdict was based on evidence that could not have been controlled by the instruction. Even if the instruction was not applicable under the charge of negligence in releasing the water, and even if the verdict should have been set aside if it had been based on that negligence, yet it can not be said that the instruction in any way prejudiced the defendant.

33—99 KAN.

8. The defendant complains of the formation of the jury, and says:

"Six were regularly drawn prior to the term of court as provided by law. Of the others, two were summoned in the case of *State v. Fava*, and as to the other four there is nothing of record to show how they got on the jury list."

There was nothing to show that these jurors were incompetent, prejudicial, or partial. Even if some of the jurors were improperly placed in the jury box, it does not appear that this affected any substantial right of the defendant, or that the defendant did not have fair treatment by the jury. In *Hanson v. Kendt*, 94 Kan. 310, 146 Pac. 1190, this court said:

"It appears that in calling the jury to the box, the clerk called the names of jurors from slips of paper on which the names were written, and when the name of an absent or excused juror was drawn, the slip was laid aside and the name not called. How this prejudiced the plaintiff does not appear. Neither does it appear that the jury was not a fair jury, nor that any particular juror was incompetent." (p. 313.)

The judgment should not be reversed on account of the manner in which the jurors were drawn.

9. The defendant contends that the court committed a number of other errors. These are that the instructions emphasized the danger connected with the defendant's business; that in the instructions apparently no loophole was left unguarded through which the defendant might escape being mulcted in damages; that the verdict was contrary to the evidence; that the court erred in overruling the defendant's motion for judgment on the special findings of the jury. Each of these complaints has been examined and no reversible error has been found in either of them.

The judgment is affirmed.

DAWSON, J. (concurring specially): I had some misgivings about this case when it was here on the pleadings (*Murray v. Electric Co.*, 96 Kan. 336, 150 Pac. 533) although I did not positively dissent. Now that the facts are all before us, those misgivings are not dissipated, but the jury's findings have largely foreclosed the controversy. It is not assigned as error and it is not argued that according to natural science, mathematics, the phenomena of hydraulics, friction, etc., it would be a physical impossibility for the volume of water

Saylors v. Bank.

which could be released from the turbines at one interval of time to cause a wall or wave of water at a corresponding interval of time high enough and swift enough to drown the plaintiff's husband at a ford two hundred and forty feet wide ten miles below the point where the water was released. It would not help the matter for me to say that I think that such a proposition is utterly preposterous. Touching the alleged errors assigned, and which are fully disposed of in the court's opinion, I feel bound to affirm the judgment.

PORTER, J. (dissenting): I dissent on the ground that the proposition or theory upon which the action is based is, to my mind, too preposterous and incredible.