No. 20,740.

THE FIRST NATIONAL BANK OF EUREKA, *Appellant*, v. NANNIE WILSON and MAMIE E. WILSON, *Appellees*.

SYLLABUS BY THE COURT.

1. BANK—*Contract with Customer—To Manage Exchange of Land— Breach by Bank—Damages—Charter Powers—Ultra Vires—Estoppel.* Where a national bank undertakes through its officers to assist a customer in the financial transaction of exchanging her land for certain lien notes and other property, and agrees to hold the deed conveying the land of the customer until the lien notes should be properly indorsed by the other party guaranteeing their payment, and the officers of the bank, after receiving compensation for their services, accept the notes without the proper indorsement and then deliver the customer's deed to the land, in violation of their agreement, by reason of which the customer suffers loss, the bank may not, when sued for the loss so occasioned and after enjoying the benefits of the transaction, set up the defense that the agreement made and the business done was in excess of its charter powers, nor escape liability upon the ground that the acts of its officers were *ultra vires*.

2. SAME—*Act of Bank Officers—Binding on the Bank.* Under the evidence it is held that the officers of the bank in making and carrying out the agreement were acting for the bank and not for themselves individually.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed June 9, 1917. Affirmed.

*Howard J. Hodgson,* of Eureka, *J. Graham Campbell,* and *Ray Campbell,* both of Wichita, for the appellant.

*E. L. Foulke, C. A. Matson,* and *J. D. Wall,* all of Wichita, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The First National Bank of Eureka brought this action against Nannie Wilson and Mamie E. Wilson upon a promissory note given in renewal of a note dated December 17, 1910. The defendants filed a cross-petition setting up a counterclaim to the bank's demand. The jury's verdict was in favor of the defendants, who recovered judgment for costs. The plaintiff appeals.

The facts upon which the defendants' counterclaim was based were substantially as follows: About September, 1910, the defendant, Nannie Wilson, entered into an oral agreement with Ira A. Braden to exchange her land in Greenwood county and some personal property for certain land in Texas and five vendor's lien notes belonging to Braden.   Desiring to have her agreement in writing and her interests· carefully protected, she sought the assistance of the plaintiff bank, and the assistant cashier referred her to Ira P. Nye, then vice president of the bank.   He undertook to draw up a contract showing the agreement between defendant and Braden, to look after her interests in the transaction, and to see that she was fully protected in the exchange of properties.   The vice president was instructed to deliver the papers conveying the defendant's property to Braden upon the latter's fully complying with his part of the agreement, part of which was to furnish an abstract showing a good merchantable title to the Texas property and also to guarantee the payment of the vendor's lien notes by his indorsement.   This part of the agreement, as incorporated in the contract written by Nye, was expressed as follows:   "And to furnish an abstract showing good and merchantable title and to indorse, assign, transfer and set over to said first party (Nannie Wilson) five certain promissory notes for $1158.60 each."   The first of these notes became due January 1, 1911. Nye delivered to Braden the papers conveying title to defendant's property, but accepted the vendor's lien notes from Braden indorsed without recourse, and the abstract which he accepted failed to show good title to the Texas land.   The defendant was unable to collect payment of the lien notes when due, and being unable to resort to Braden for their payment, had to take the land securing the notes, from which she was unable to realize their full value.   This fact together with the partial failure of title to the Texas land subjected defendant to a loss much greater than the amount of the plaintiff's demand, but ·the statute of limitations having run against her claim, she was not allowed to offset more than the amount of the plaintiff's claim against her.   It was in expectation of realizing upon the first lien note, due January 1, 1911, which was left with plaintiff bank for collection, that defendant had

borrowed from plaintiff the $700 for which she executed her note. A renewal note for this indebtedness was the note sued upon in this action by plaintiff.

The bank contends that Nye acted for himself in the transactions with defendant, and not for the bank as an officer of the bank. This was a question of fact upon which the evidence was conflicting, and it may safely be said that the finding that he was acting for the bank is not without support. Defendant was unwilling to close the deal unless the bank would take care of her interests and see that she had a square deal. She therefore applied to the bank, and its vice president undertook to protect her interests, and, among other things, to obtain the indorsement of the lien notes by Braden. At this time she asked the vice president the question, "Will your bank stand back of me in this transaction; will you draw the contract and stand by it?" and he answered, "Certainly." In the contract which was drawn up it was provided that the deeds, abstracts and papers should be deposited in the bank. In the correspondence conducted in carrying out the transaction most of the letters written by Nye were signed as vice president. After the deed was executed by defendant and left in the bank and the question of its delivery arose the vice president said, "You can trust this bank, Mrs. Wilson; it will be all right for you to leave this deed signed here and we will see that it is not delivered to Mr. Braden until his securities are approved." In one letter written by Nye to defendant as to the collection by the bank of one of the lien notes he said: "You see he made it payable to you and without your indorsement we could not collect it." Later, according to the defendant's testimony, the cashier told Mamie Wilson, the daughter of defendant, that the bank had handled the deal very badly for her mother, and added: "If I had been in the bank at the time, your mother should never have made the deal." A number of other letters written by the vice president tended in some degree to show that it was a bank rather than an individual transaction. A charge of twenty dollars was made for transacting the business and this the defendant paid. Under the evidence it must be held that the verdict settles the dispute as to the capacity in which the vice president was acting and is a final determination that he was acting for the bank throughout the transaction.

There is a contention, however, that the business was beyond the scope of the bank's charter powers and that it could not be bound by the acts or agreements of its officers. The preparation of the contract and examination of abstracts are probably outside the scope of the ordinary business of banking, but the handling of the notes and securities and the collection of them were incidental to the banking business. It is well known that country banks exercise many of the duties and powers of loan and trust companies and assist their patrons in closing up financial deals like the one under consideration. But granting that the officers exceeded the charter powers of the bank to some extent, it undertook the business, transacted it in a way, and accepted compensation for its services and for the responsibility which it assumed. It failed to perform its agreement in that it accepted the notes without indorsement and guaranty and delivered the executed deed of defendant which it was holding. Banks, like individuals, are liable for the wrongs which they commit and the injuries which they cause. In a consummated transaction, wherein it gained an advantage and occasioned an injury and loss to defendant, it can not defend by saying that it exceeded its charter powers when it made the agreement and undertook to perform it. It is not permitted to enjoy the benefits of a transaction like this, even if it be not strictly within the business of banking nor incidental to it, and escape liability upon the ground that its acts were *ultra vires*. (*Cooper v. National Bank*, 40 Kan. 5, 18 Pac. 937; *Town Co. v. Morris*, 43 Kan. 282, 23 Pac. 569; *Town Co. v. Russell*, 46 Kan. 382, 26 Pac. 715; *Town Co. v. Lincoln*, 56 Kan. 145, 42 Pac. 706; *Railroad Co. v. Johnson*, 58 Kan. 175, 48 Pac. 847; *Opera House Co. v. Loan Association, post*, p. 76, 53 Pac. 761; *Harris v. Gas Co.*, 76 Kan. 750, 92 Pac. 1123.)

It must be held, therefore, first, that the agreement was made by the bank, and, second, that it is responsible for the injury and loss which resulted from the negligent acts of its officers.

The view taken disposes of the objections made to the rulings upon evidence and also to the instructions. We find no material error in the proceedings, and therefore the judgment is affirmed.