No. 20,582.

THE CINCINNATI DISCOUNT COMPANY, *Appellant*, V. A. E. ASHER and THE COMMERCIAL NATIONAL BANK, *Appellees*.

SYLLABUS BY THE COURT.

1. FRAUD—*False Representations—Verdict for Plaintiff—New Trial Ordered.* Upon evidence tending to show that false representations had been made by the defendant, that plaintiff had relied upon them, and had sustained a substantial loss, a verdict awarding plaintiff the sum of one dollar can not be treated as a finding in favor of the defendant; but the court, not being satisfied with the result, should have set aside the verdict and granted a new trial on the motion of plaintiff.

2. BANKING—*Unauthorized Actions of Officers—Liability.* A bank can not be held liable for the unauthorized transactions of its officers unless it actually receives and retains the benefit of such transactions.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed July 7, 1917. Affirmed in part and reversed in part.

*J. S. Simmons,* and *K. K. Simmons,* both of Hutchinson, for the appellant.

*C. M. Williams,* and *D. C. Martindell,* both of Hutchinson, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Cincinnati Discount Company brought this action against the Commercial National Bank at Hutchinson and A. E. Asher, its president, to recover money paid for alleged fictitious and worthless promissory notes purchased from J. J. Gouy, in reliance upon representations made by Asher as to Gouy's standing. At the trial a demurrer to plaintiff's evidence interposed by the bank was sustained and the cause proceeded as to the other defendant. The jury returned a verdict in plaintiff's favor in the sum of one dollar, and the court set aside the verdict and rendered judgment in defendants' favor for costs. A motion by plaintiff for a new trial as to both defendants was denied. From the orders and judgment plaintiff appeals.

Plaintiff was in the business of discounting notes given in payment for pianos, and had received a number of such notes from Gouy, who was a piano dealer and represented the Starr Piano Company. In contemplation of discounting these notes plaintiff made inquiries of various parties, including the president of the defendant bank, as to Gouy's integrity and business responsibility. Plaintiff received a letter written by the president of the bank stating that a large amount of business had been done with Gouy of a satisfactory character, and he knew of no reason why Gouy's paper would not be good. It appears that the Starr Piano Company had had some litigation with Gouy, its claim being that he had withheld certain remittances due from collections on piano notes of the company, that it had secured judgment against him, and that Asher and E. T. Guymon gave a bond undertaking to pay and did pay the judgment. Under that arrangement the Starr Piano Company turned back to Asher piano notes to the amount of about $10,400 to be collected by Asher. The proceeds of these collections were credited to a special account which he opened in the defendant bank, from which the money was checked out to the Starr Piano Company in satisfaction of the judgment. It was part of these notes that Gouy discounted to the plaintiff, Gouy obtaining them from Asher with the agreement that he was to apply the proceeds therefrom upon the indebtedness to the Starr Piano Company. J. M. Crawford, president of the plaintiff, had heard of this litigation, and before advancing any money to Gouy on the piano notes he went to Hutchinson and had a personal interview with Asher relative to Gouy and his business. He had with him a check ready to be signed and delivered to Gouy for the notes in the event he heard nothing shaking his confidence in Gouy's credit. He testified that he questioned Asher particularly with reference to the Starr Piano Company litigation, and was told that it was not due to anything discreditable on Gouy's part, and that the bank had stepped into the matter and taken charge of satisfying the judgment. He recommended Gouy as a safe person with whom to deal, and told him that the bank had done a satisfactory business with him for several years, and at that time had advanced about $9000 to Gouy upon his piano paper. Crawford then opened an account with Gouy and delivered to him the

check, in amount $3517.68; and thereafter two other checks were delivered: one dated September 13, for $3023.04, and the other October 7, for $1774.15. The first payment from plaintiff was applied by Gouy on the judgment indebtedness, and the second was credited to the special account. The third was applied upon an indebtedness held by the bank.

The ruling sustaining the demurrer to the evidence must be affirmed so far as the bank is concerned. A recommendation of the financial standing of an individual was not within the scope of the powers and duties for which the bank was created. It can only be held for the unauthorized acts of its officers where it accepts and retains the benefits arising from such acts. (*Bank v. Wilson,* 101 Kan. 72, 165 Pac. 859; *Citizens' National Bank v. Appleton,* 216 U. S. 196.) There is testimony that benefits were derived by Asher from the transactions in question, but none showing that the bank benefited by them. It is claimed that as some of the proceeds given by the plaintiff were paid upon a note held by the bank, it is liable. The last payment made by the plaintiff, $1774.15, was applied upon this note which was given by Gouy to the bank. The note had been guaranteed by Asher and Guymon, who had undertaken to pay the Starr judgment, and the proceeds of the note had been applied on the judgment. The transaction was therefore one for the benefit of Asher and Guymon and not such an one as would fasten liability upon the bank.

As to Asher, the other defendant, the jury upon conflicting evidence found against him and awarded the plaintiff a recovery of one dollar. In effect the jury found that Asher had made false representations as to Gouy, and that the plaintiff, relying upon these representations, had discounted notes and parted with money amounting to $8314.87. The court appears to have treated the verdict as a finding in favor of the defendant, as it overruled a motion of plaintiff for a new trial, and upon its own motion gave judgment to the defendants for costs. In view of the testimony in the case and the finding of the jury the court was not warranted in treating the verdict as a finding in favor of the defendant. Plaintiff's testimony was sufficient to authorize a finding that defendant Asher had fraudulently represented the facts as to the financial operations and standing of Gouy and that plaintiff had relied on these repre-

sentations. In this regard the jury appears to have believed the plaintiff's testimony instead of that offered in behalf of Asher. It is contended that plaintiff failed to show that it had suffered a loss, but it was shown that a large part of the notes discounted by plaintiff were forgeries; that is, fictitious names were signed to them. These notes were not paid, and Gouy, who had negotiated them, was a fugitive from justice. While the amount of the loss was not definitely proven, there was enough to show that the loss greatly exceeded the amount awarded by the verdict. Under these circumstances the court should have granted the plaintiff a new trial. The mere fact that the jury only awarded plaintiff a small amount is no justification for setting aside a finding which had been made upon conflicting evidence. (*Miller v. Miller*, 81 Kan. 397, 105 Pac. 544; *Jackson v. Humboldt*, 84 Kan. 445, 113 Pac. 1047.)

The defendant cites *Haven v. Missouri Ry. Co.*, 155 Mo. 216, as an authority sustaining the ruling of the court. There the verdict of the jury awarded plaintiff only nominal damages. The trial court granted plaintiff a new trial, and the supreme court, while expressing the opinion that the finding of the jury was in effect a verdict for the defendant, did not direct judgment to be entered in favor of the defendant but affirmed the judgment of the trial court awarding plaintiff a new trial. The result of that case is more satisfactory than the statement that the verdict might be treated as a finding for the defendant. The practice of the trial court in that case is the one which should have been adopted in this, by the granting of a new trial.

For that purpose the judgment is reversed and the case remanded.