No. 25,610.

The Farmers State Bank of Speed, *Appellee*, v. Fritz Brenneke, *Appellant*.

SYLLABUS BY THE COURT.

1. Bills and Notes—*Bona Fide Holder—Instructions—Evidence.* It is not reversible error to instruct a jury that the possession of a negotiable promissory note by an indorsee is *prima facie* evidence that he acquired the same in good faith for value in the usual course of business before maturity without notice of any circumstance that would impeach its validity and that the *prima facie* case is not overthrown by evidence which does not more than create a suspicion.

2. Same—*Bona Fide Holder—Evidence.* Evidence by the maker of a promissory note to prove that the note was procured by fraud does not establish *prima facie* that the holder obtained it with notice or knowledge of the fraud.

3. Trial—*Special Questions—Failure to Answer.* It was not error to submit to the jury the special questions which were not answered. Answers thereto were made unnecessary by answers to other questions which were properly submitted.

4. Banks and Banking—*Unauthorized Acts of Officers—Liability.* A banking corporation organized under the laws of this state is not liable for any representation made by its cashier to the maker of a promissory note to procure his signature thereto where the note is given to a third person and where the bank is not benefited thereby, but evidence to show such representations may be considered by the jury to determine whether or not the bank had notice of the fraud at the time it became the holder of the note.

Appeal from Phillips district court; Willard Simmons, judge. Opinion filed April 11, 1925. Affirmed.

*A. W. Relihan, T. D. Relihan, J. T. Reed,* all of Smith Center, and *W. A. Barron,* of Phillipsburg, for the appellant.

*W. E. Mahin,* of Norton, *H. McCaslin,* of Osborne, and *T. M. Sullivan,* of Logan, for the appellee.

The opinion of the court was delivered by

Marshall, J.: This action is one to recover on two promissory notes. Judgment was rendered in favor of the plaintiff and the defendant appeals.

The defense was that the notes, which had been given for certificates of shares in the Associated Mill and Elevator Company, had been procured by fraud and that the plaintiff had purchased them with knowledge and notice of that fraud.

Farmers State Bank v. Brenneke.

1.  Complaint is made of the following instruction:

"15. As heretofore instructed the possession of negotiable instrument properly indorsed, is *prima facie* evidence that the holder is the owner thereof, and that he acquired the same in good faith, for value, and in the usual course of business, before maturity without notice of any circumstance that would impeach its validity, and that he is entitled to recover upon it, and this *prima facie* case is not overthrown by matters which at best, do not more than create a suspicion."

The defendant argues that the final clause in the instruction, "this *prima facie* case is not overthrown by matters which at best, do not more than create a suspicion," cast on the defendant the burden of showing that the plaintiff had notice of the fraud.

In *Gigoux v. Moore*, 105, Kan. 361, 366, 184 Pac. 637, this court said:

"Here, as in the case of notice of infirmity in the instrument or defect in title of the holder, bad faith is bad faith in fact, bad faith derived by inference of fact, as distinguished from inference of law.. Here, as in case of notice of infirmity or defect in title, failure to use ordinary diligence in following up suggestive facts, or facts arousing suspicion, is not ·sufficient [to defeat the note]." (See, also, *Gigoux v. Henderson*, 107 Kan. 325, 327; 190 Pac. 1092.)

This court has held that, in an action by the indorsee of a note which is shown to have been procured from the maker by the fraud of the payee, the burden is on the plaintiff to show that he procured the note in due course. (*Ireland v. Shore*, 91 Kan. 326, 137 Pac. 926; *Schmidt v. Benedict*, 104 Kan. 196, 197, 178 Pac. 444; *Beachy v. Jones*, 108 Kan. 236, 195 Pac. 184; *Weisdanger v. Lind*, 114 Kan. 523, 220 Pac. 263; *Consolidated Motors Co. v. Urschel*, 115 Kan. 147, 148, 222 Pac. 745.)

The instruction complained of should be read in connection with instructions numbered 13, 17 and 18. Instruction No. 17 reads as follows:

"The burden of proof in this case is first upon the plaintiff to show that he is the holder of the notes sued upon. This burden is established by defendant's admission that plaintiff is the owner and holder of said notes. If fraud is established by the defendant by a preponderance of the evidence as alleged by defendant, then the burden is on the plaintiff to show it is a holder in due course, for value, before maturity, without notice as more fully instructed herein. You will consider the instructions as a whole, and not one or more instructions taken out and considered unconnected with the others. Give due weight to each instruction so as to harmonize them as a whole when taken together."

It will be noticed that if fraud was established by the defendant,

this instruction placed on the plaintiff the burden of proof that it was the holder in due course. It was not error to instruct, as given in instruction No. 15, that merely a suspicion of fraud created by the defendant's evidence was not sufficient to overthrow the *prima facie* case, but, as stated in instruction No. 17, that if the defendant established fraud by a preponderance of the evidence, the burden of proof was upon the plaintiff to show that it was a holder in due course without notice of the fraud. When all the instructions are considered together, it does not appear that there is any reversible error in instruction No. 15.

2. Complaint is made of the refusal of the court to give the following instruction requested by the defendant:

"Gentlemen of the jury you are instructed, that if you find from the evidence that the notes sued upon were obtained by fraud, then proof of such fraud in obtaining said notes also establishes a *prima facie* case that the bank had knowledge of such fraud at the time it acquired the notes. And in case fraud in the inception of said notes has been established by a preponderance of the evidence you are justified in finding that the bank had knowledge of such fraud without any other evidence of such fact, unless you further find that the evidence introduced in this case, if any, tending to show that the bank did not have knowledge of such fraud, is sufficient to overcome such *prima facie* case of notice and to satisfy your minds that at the time the bank acquired the notes it did not have knowledge of such fraud."

An examination of the instructions reveals that the requested instruction, so far as correct, was in substance given by the court. The following language: "Proof of such fraud in obtaining said notes also establishes a *prima facie* case that the bank had knowledge of such fraud at the time it acquired the notes," did not correctly state the law. Proof of fraud in procuring a signature to a note is not any evidence that the holder of the note had knowledge or notice of the fraud, although the holder must then show that he procured the note in due course. It is not error to refuse to give a requested instruction where it is substantially given in the general charge of the court. (*Baugh v. Fist*, 84 Kan. 740, 115 Pac. 551; *Thompson v. Machine Co.*, 94 Kan. 453, 146 Pac. 1188; *Berhenke v. Penfield*, 94 Kan. 532, 146 Pac. 1187; *Hayes v. Nutter*, 98 Kan. 75, 157 Pac. 428; *Murray v. Electric Co.*, 99 Kan. 507, 162 Pac. 1145; *Cox v. Chase*, 99 Kan. 740, 163 Pac. 184; *Turner v. Railway Co.*, 106 Kan. 591, 189 Pac. 376.) If a requested instruction is partly good and partly bad, it is not error to refuse to give it. (*Kansas Ins. Co. v. Berry*, 8 Kan. 159; *Dickson v. Randall*, 19 Kan. 212, 215; *The State v. Perkins*, 112 Kan. 455, 210 Pac. 1091.)

3. The defendant complains of the submission of questions to the jury. We quote from the abstract as follows:

"The following special questions were, on request of the plaintiff, submitted to the jury, the 2nd, 3rd, and 4th being submitted over the objection of the defendant, the defendant excepting.

"1. Do you find that the plaintiff purchased the notes in question:

"(a) For value?

"(b) Before maturity?

"(c) In due course?

"(d) Without notice of infirmity?

"2. If you answer 'No' to (d) in question 1 then state what notice of such infirmity it had.

"3. If you answer 'No' to (d) in question 1 state fully the facts as to when, by whom, or in what manner such notice was imparted to the plaintiff.

"4. If you answer 'No' to (d) in question 1 then state fully of what such infirmity or infirmities consisted, and state fully the bad faith of the plaintiff?

"5. Prior to the time of the execution of the notes, was there an agreement or understanding between the plaintiff bank, through its cashier, Charles Hull, the agents Chryst and Hilton and the defendant, Fritz Brenneke, that immediately upon their execution the notes were to be taken by the plaintiff bank and certificates of deposit issued therefor to the company represented by said agents? Answer.

"6. If you answer question 5 yes, then answer this question: Were the notes, immediately after their execution, turned over to said agents and by them immediately delivered to said bank, in pursuance of said arrangement? Answer.    ---------------------------------------------

*Foreman.*

"The above and foregoing questions were answered by the jury and signed by its foreman, as follows:

"(a), (b), (c), and (d) of questions 1 were each answered 'Yes'; question 5 was answered 'No' and the remainder were unanswered."

The questions complained of, those numbered 2, 3, and 4, were not answered. Answers thereto were not required because of the answers to the first question submitted. It does not appear how the submission of the questions complained of injured the plaintiff.

4. Complaint is made of instructions No. 14 and No. 23, and the defendant urges that by those instructions the court erroneously and "wholly eliminated from the consideration of the jury the issue as to whether the bank and its cashier, Charles Hull, assisted in the illegal sale of the stock for which these notes were given." Those instructions were to the effect that the plaintiff, being a banking corporation organized under the laws of this state, had no authority to sell stocks or bonds and therefore was not responsible for any representation made by its cashier to any purchaser who should buy

stocks or bonds then being sold by other parties and that "the court permitted such evidence only as to determining the fact as to whether or not the plaintiff had notice or sufficient knowledge to amount to notice of the defect or infirmities in notes or title to the same, as to false or fraudulent representations of said association or its agents, if any were so made in procuring said notes . . . and only goes to the question of notice, if any." The court had permitted evidence to be introduced which attempted to prove that the cashier participated in and had knowledge of the fraud in pro- curing the notes for the purpose of proving notice to the bank.

The powers of banking corporations organized under the laws of this state are defined by statute. (R. S. 9-101.) That statute does not give to such banks any authority to buy or sell, or assist in the sale of, the stock or certificates of shares in mill and elevator companies or other corporations. In *Discount Co. v. Bank,* 101 Kan. 253, 166 Pac. 476, the court said:

"A bank cannot be held liable for the unauthorized transactions of its officers unless it actually receives and retains the benefit of such transactions." (See, also, 7 C. J. 561.)

It does not appear that the plaintiff bank received any benefit resulting from the fraud, if there was any, practiced on the defend- ant by those who procured the execution of the notes. If the plain- tiff's cashier made representations to the defendant concerning the purchase of the shares in the mill and elevator company, the plain- tiff would not be liable unless it received no benefit therefrom. But, if the cashier had participated in the fraud, the bank would have had notice of that fraud and could not enforce the collection of the notes. Instruction No. 13 charged that "notice or knowledge, if any, of the cashier of the bank received by him while attending to his duties as cashier of such bank would be notice or knowledge of the plaintiff." However, under evidence sufficient to support the finding and under proper instructions concerning the matter, the jury found, in answer to a special question, that the bank did not have notice of any infirmity in the notes, which answer neces- sarily included that the bank did not have notice of fraud in pro- curing the notes and that its cashier did not participate in any fraud that may have been practiced on the defendant.

Since the defendant is only defending and is not seeking to re- cover from the plaintiff on account of the alleged fraud, the pos- sible participation therein by the bank's cashier was essential to

the consideration of the jury only so far as necessary to determine whether the bank had notice or knowledge of any fraud that may have been practiced in procuring the execution of the notes. That matter was fully submitted to the jury by instructions numbered 13, 14, and 23.

The judgment is affirmed.

HARVEY, J., dissenting.