No. 31,726

The Claude Neon Federal Company of Kansas, *Appellee,*
v. Maurice E. Majors, doing business as Wichita Mapping
& Engineering Company, *Appellant.*

(33 P. 2d 934.)

Opinion filed July 7, 1934.

*John Madden, John Madden, Jr.,* and *Fred M. Field,* all of Wichita, for the appellant.

*Arnold C. Todd, Julian E. Ralston* and *Ralph Gore,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is an appeal by the defendant from a judgment rendered by the trial court in favor of the plaintiff upon the pleadings. In other words, the trial court held the allegations of the answer constituted no defense to the plaintiff's cause of action.

The defense was fraud and misrepresentations made by the agent of the plaintiff company as to the regular market price and the prevailing price for the lease of a display sign, installment and service.

The plaintiff sued the defendant to recover the balance of monthly rental of $40 per month for thirty-six months, or $1,440, less the installments paid, for the lease of a Neon display sign and accessories, including maintenance and repairs except those resulting from the negligence of the lessee. The credits given amounted to $565. The defendant in his answer does not undertake to rescind the contract. He admits the correctness of the account, but seeks to cancel the contract and recover $165 as damages on account of fraud and misrepresentations as to the market or prevailing price of such serv-

ices rendered in the use of such sign and the maintenance thereof. The following are the allegations of the answer as to fraud and misrepresentations made by the plaintiff's agent, Hammond, before defendant signed the contract dated December 16, 1929: That defendant needed such a display sign, that it was necessary to advertise his business, and that these particular signs were handled exclusively by the plaintiff. (These three allegations are not denied by the defendant in any way.) The answer further alleges:

". . . That the price of the same, installment and service was fourteen hundred forty dollars ($1,440) for this class of display signs. That it was the regular market price to all the trade, . . . that this was the prevailing price for such display signs, installment and service.

"Defendant was unfamiliar with this kind of property, and the market value was not easily ascertainable, and being entirely ignorant of its market value and knowing that this class of display signs, equipment, installment and service was something new to the trade in Wichita, and new to the defendant, he relied upon the representations so made by Howard L. Hammond and signed the contract set out in plaintiff's petition and paid installments thereon in the sum of five hundred sixty-five dollars ($565). That by reason of said representations, contract be set aside and canceled.

"That on or about April 24, 1932, he discovered that the market value of said display sign, equipment, installment and service had been grossly overstated and misrepresented, and that the fair market value thereof was four hundred dollars ($400). That said representations were false and fraudulent and designed to obtain defendant's signature to said contract and obtain from him a grossly excessive price for the display sign. That after having discovered that he had been imposed upon by the false and fraudulent representations as aforesaid, he refused to make any further payments thereon, as by that time he had paid five hundred sixty-five dollars ($565), or the sum of one hundred sixty-five dollars ($165) in excess of the fair, reasonable market value of said display sign, equipment, installment and service, to his damage in said amount."

The reply was a general denial. A copy of the contract is attached to the petition, and it contains the following provision:

"The company agrees to furnish, erect, connect and maintain at its own cost the Claude Neon electrical advertising display sign and accessories hereinafter called the display which are and shall remain the property of the company . . ."

Our attention is particularly directed to the statement in the answer that the agent had told defendant "that it was the regular market price to all the trade." Appellee construes these last four words as referring to the trade or customers of the plaintiff. If such is its reasonable meaning, then it would be a positive repre-

sentation by the agent that the plaintiff company was not leasing such display signs to any of its other customers for less than the price charged the defendant, which might be a very different price from that which others were charging, which would make the market price. But the further allegation of the answer is the discovery nearly two and one-half years later that the market value of such display signs was only $400, and every reference in the third paragraph of the answer as to the discovery is about the "market value" of such signs, except the concluding words of the paragraph as to the counterclaim of $165, where the words used are that such amount is "in excess of the fair reasonable market value of said display sign, equipment, installment and service," and the first sentence of that paragraph where it refers to the market value of the display sign, equipment, installation and service. If the market value of such display sign was only $400, no dealer could afford to lease it for three years with the privilege of two additional years and maintain it and keep it in repair for $400, payable in monthly installments. So under either of these allegations the regular market or prevailing price of the lease of such a sign, or the regular market price to all of the plaintiff's trade or customers, are not matters that can be compared with the regular or fair market value of the sign. And proof that the regular or fair market value of the sign was only $400, even including maintenance and repairs, would not establish fraud or misrepresentations as to the regular or prevailing price of the lease of such a sign or the regular market price of the lease of such sign to all of plaintiff's trade or customers.

Appellant very properly calls our attention to the rule applicable where one of the parties is entirely unfamiliar with the article or thing involved in the contract, this must be considered in favor of the defendant under the allegations, but it alone is not controlling, nor important unless there is fraud.

Appellant cites *Bushey v. Coffman,* 103 Kan. 209, 173 Pac. 341, and other Kansas cases to show that his client should not be considered as having waived his rights to raise the question of fraud and misrepresentations by reason of having made some of the monthly installments, and in this we agree with appellant. We do not regard *Shook v. Manufacturing Co.,* 75 Kan. 301, 89 Pac. 653, as strictly applicable. Defendant here does not allege or complain that the contract contained things different from what the agent stated.

*Van Natta v. Snyder,* 98 Kan. 102, 157 Pac. 432, and *Geiger v. Cardwell,* 99 Kan. 559, 163 Pac. 613, and other cases cited by the appellant refer to fraud in connection with the value of real property purchased, and they involve no questions of leasing, maintaining or repairing or comparison with prices to the trade or other customers.

*Johnson v. Schrag,* 134 Kan. 80, 4 P. 2d 450, cited by appellant, was based upon a straight question of value, selling stock at $75 per share that was worth only $22.50.

Among the peculiar and unusual things connected with this case which afford us no way of comparing lease price and market value of the sign, if such difference was effected by fraud or misrepresentations, and which can be readily observed in the closing paragraph of appellant's brief in connection with his argument against being bound by continuing monthly payments after discovery of fraud, is the effect of the following language:

"The contract was one of lease; the appellee could terminate it by taking the sign, and ending the service, and leave us to obtain relief in a separate action."

Although the only right to the sign was by a contract of lease, and the sign was still there as the brief states, and the contract provides that it shall always remain the property of the company, yet it has in effect, by reason only of alleged difference in lease price and market value and the discontinuance of the monthly payments, become an article as if owned by the defendant, being used by him as if it had originally been purchased.

A similar answer was filed in a foreclosure action in the case of *Berridge v. O'Flanagan,* 122 Kan. 74, 251 Pac. 175, and it was there held not to constitute a defense to the note and mortgage.

"In an action upon notes and to foreclose mortgages given to secure them, an answer is examined, and held not to state a defense." (Syl.)

"The sole question before us is whether this answer states a defense. It seems clear that it does not, for several reasons: First, there is no denial that plaintiff executed the notes and mortgages, nor that she received the amount of money represented by them from the Central Trust Company. . . . Second, the allegations of the fraud of J. E. Fields are insufficient as a defense, for the reasons, . . . statements as to the value of real estate by agents endeavoring to sell or exchange the same are ordinarily regarded as expressions of opinion and not representations of fact which will justify an action either for rescission or for deceit." (p. 75.)

Expressions of value are usually regarded as opinions of the dealer, rather than statements of past or existing facts. In 26 C. J. the following statements are found on this subject:

"Misrepresentations as to value cannot ordinarily constitute fraud because they are generally to be regarded as mere expressions of opinion or 'trader's talk,' involving a matter of judgment and estimation as to which men may differ." (p. 1215.)

"Whether in any given case a misrepresentation is 'trade talk' or an actionable misrepresentation of fact depends upon the particular circumstances involved." (p. 1098.)

We concur with the trial court in holding that the allegations of fraud contained in the answer would not, if proved, constitute fraud, as a matter of law, and defeat the recovery of the plaintiff upon its cause of action.

Appellee, separate and apart from its brief on the merits of the appeal, suggests that this court should dismiss this appeal for want of jurisdiction, setting out copies of the papers filed and used in effecting an appeal from the city court of Wichita to the district court of Sedgwick county, and citing our recent decision in the case of *Auto Trunk Co. v. Hahn,* 138 Kan. 36, 23 P. 2d 585. It has been held—

"The court can only review rulings made by the district court and cannot consider questions raised for the first time on appeal. To obtain a reversal of a ruling the record must show that the very matter presented here was distinctly brought to the attention of the trial court, and was so definitely pointed out that there is no misunderstanding of the question actually decided." (*Bremen State Bank v. Loffler,* 121 Kan. 6, 8, 245 Pac. 742.)

The judgment of the trial court should be affirmed and the application to dismiss the appeal be denied.

It is so ordered.