No. 26,768.

THE FARMERS STATE BANK OF QUINTER, *Appellee*, v. WILLIAM RUESCHHOFF, *Appellant*.

### SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Defense—False Representation as to Nature of Organization.* A false representation by one selling shares or interests in a "Massachusetts trust," that the organization is a corporation organized under the laws of Kansas, made to secure the execution of a promissory note to pay for stock in the organization is such a misrepresentation as will avoid the payment of the note given to pay for such stock where the note is in the hands of one who is not a holder thereof in due course.

2. SAME—*Defense—False Representations—Party Not Holder in Due Course.* Payment of a promissory note in the hands of one who is not a holder thereof in due course may be defeated where the execution of the note was secured by false representations, and where the person executing the note is damaged to the full extent of the amount named in the note, although the person making the representations believed them to be true.

3. BANKS AND BANKING—*Knowledge of Officers as Knowledge of Bank—Defense to Note.* Where a bank, organized under the laws of this state, participates in the promotion and construction of a grain elevator and is directly benefited thereby, knowledge of the officers of the bank obtained while promoting the business and construction of the elevator is such knowledge of the bank as will charge it with notice of a defense to a promissory note which is given for an interest in the elevator while the bank is beneficially interested in the promotion and construction of the elevator.

Appeal from Gove district court; JACOB C. RUPPENTHAL, judge. Opinion filed November 6, 1926. Reversed.

*W. L. Sayers,* of Hill City, and *J. H. Jenson,* of Oakley, for the appellant.
*David Ritchie, Omer D. Smith,* both of Salina, and *R. H. Thompson,* of Gove City, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff sued to recover on a "myself" negotiable promissory note given to the Associated Mill and Elevator Company for stock therein. The defense was that there was no consideration for the note and that the signature thereto had been procured by fraud. Judgment was rendered in favor of the plaintiff for the full amount of the note, and the defendant appeals.

Appeal and Error, 4 C. J. p. 1050 n. 85. Banks and Banking, 7 C. J. pp. 530 n. 71, 533 n. 86; 3 R. C. L. 475. Bills and Notes, 8 C. J. pp. 781 n. 34, 784 n. 61, 785 n. 75. Trusts, 39 Cyc. p. 34 n. 45.

Farmers State Bank v. Rueschhoff.

The plaintiff, in its reply to the defendant's answer, set out a copy of a contract entered into between the plaintiff and the Associated Mill and Elevator Company, as follows:

"Whereas, it is desired by the citizens of Gove county, Kansas, residing in and in the vicinity of Quinter, and by Associated Mill and Elevator Company that a reinforced steel and concrete modern grain elevator with a sufficiently large number of small bins to care for the various kinds and grades of grain grown in territory tributary to Quinter, Kansas, of a capacity of 100,000 bushels be erected at Quinter, Kansas, on or near the railroad right of way, and that the sum of one hundred thousand ($100,000) dollars be subscribed and paid by the citizens of such county residing in territory tributary to Quinter, Kansas, for shares of beneficial interest in the company of the par value of one hundred ($100) dollars.

"Now, therefore, it is agreed by and between the Farmers State Bank of Quinter, Kansas, as trustee for subscribers for such shares, and subscribers who attach their name hereto or to duplicates hereof, or who become parties hereto by subscribing for such shares, first parties, and Associated Mill and Elevator Company, second party, as follows:

"Whenever the sum of $100,000 shall have been paid by subscribers for such shares into the Farmers State Bank of Quinter, Kansas, for such shares, the Associated Mill and Elevator Company shall proceed with reasonable diligence to acquire a site for such elevator and will commence and prosecute to completion the construction and erection of such elevator at Quinter, Kansas, so that the same may be completed in time to receive the grain crops maturing after July 1, 1921, strikes, lockouts, acts of Providence, conditions of war and of the elements excepted.

"Provided, however, that should the sum of $100,000 not be subscribed, then the capacity of such elevator to be erected shall have the same bushels capacity as the number of dollars subscribed.

"Of the amount subscribed 60 per cent shall be placed on deposit in the Farmers State Bank of Quinter, Kansas, and shall only be used in the payment of obligations incurred in obtaining a site, payment of bills for labor, material, insurance, plans and specifications, and like obligations incurred in the construction of such elevator and the equipment thereof ready for use.

"The second party shall approve the bills payable from such fund before they are paid, and the second party's checks upon such fund shall only be paid by said Farmers State Bank upon the approval of such bills by the Associated Mill and Elevator Company or its representative.

"The remaining 40 per cent of funds derived from such subscriptions shall be delivered to the second party. Second party will give bond in the sum of twenty five thousand dollars that they will comply with the terms of this contract and erect such elevator in a good and workmanlike manner within the time limited, such bond to run to the Farmers State Bank of Quinter, Kansas, for the benefit of all subscribers to such shares and to be deposited with such bank.

"The second party is to use every effort to begin the construction of such elevator at the earliest practicable date and to complete the same within the time limited.

50—121 KAN.

"Whenever $50,000 of such subscriptions under this contract shall be paid in to said Farmers State Bank of Quinter, Kansas, the parties making such payments shall then be entitled to have issued and delivered to them the certificates for which they have subscribed and paid, and thereafter the division of such funds, 60 per cent to such construction fund in said bank shall be made and 40 per cent delivered to the second party, and thereafter, as such subscriptions continue, such division of funds shall be made weekly. All sums received from subscriptions over and above $60,000 shall be paid to the second party.

"In witness whereof, the parties hereto have hereunto signed their names this 11th day of November, 1920.

(Signed)    FARMERS STATE BANK,<br>
By E. L. WICKIZER, *Cashier.*<br>
(Signed)    ASSOCIATED MILL & ELEV. Co.,<br>
By H. C. NUNN, *Its President.*

(Seal)   PAUL NOBLE, *Secretary."*

There was evidence which tended to prove that E. L. Wickizer was the cashier of the plaintiff bank, and that Oliver Wiley was one of its directors and was a member of its discount board. The issues were presented to a jury which rendered a verdict in favor of the plaintiff and answered questions as follows:

"1. Did the plaintiff bank purchase the note in question before maturity, paying full value therefor? A. Yes.

"2. Did the plaintiff bank purchase the note in question in bad faith? A. No.

"4. Was the note in question obtained from the defendant by means of false and fraudulent representations? A. Yes.

"5. If you answer question No. 4 Yes, then set out fully the false and fraudulent representations by means of which said note was so obtained. A. That Abercrombie gave Rueschoff a contract witnessed by Wiley and Wickizer, that he would repurchase said stock from Rueschoff if defendant so wished, which he failed to do; that Rueschoff was promised 8 per cent annually on the stock he purchased, which was not paid, and that the mill and elevator would be managed by a board of farmers, which was false.

"6. If you answer question No. 5 by setting out the false and fraudulent representations by which the note in question was obtained, then did the plaintiff bank at the time it purchased said note have any actual knowledge or notice of the making of such false and fraudulent representations? A. No. . . .

"8. Did Rueschoff in buying the stock and giving his note rely on representations made by agents of the Elevator Co. which were false? A. Yes.

"9. Do you find that E. L. Wickizer, cashier of the Farmers State Bank, was active in the promotion of the sale of stock of Associated Mill & Elevator Co. at and before the time of the execution of note in suit? A. Yes; but not as a representative of the Farmers State Bank of Quinter.

"10. Was Oliver Wylie a member of the board of directors and of discount board of plaintiff at and prior to the date of the note in suit? A. Yes.

"11. Did Oliver Wylie take an active part in the sale of the stock for which defendant's note was given? A. Yes.

"12. Prior to the date of the transaction with the defendant, was it the practice of Abercrombie to make false representations to farmers in the vicinity of Quinter to obtain their notes for shares in the Associated Mill & Elevator Company? A. Yes.

"13. If you answer the above question Yes, then do you find that Wickizer knew of such practices at and before the purchase of the stock by the defendant, Rueschhoff? A. Yes.

"14. If you answer the foregoing question 13 Yes, then do you find that such knowledge was sufficient to constitute bad faith? A. Yes; but not on part of the bank.

"15. If you find that false representations, if any, of the ten items set out in instruction 11 were made, then when and how did defendant Rueschhoff learn that such representations were false? A. At the time he tried to redeem his note with his elevator stock, at the bank, about July, 1921."

1. The defendant complains of the failure of the court to give the following instruction:

"4. You are instructed that the following representations recited in the answer of the defendant are material representations, and if such representations or any one of such representations were made to defendant for the purpose of procuring the note in suit, and if same or any one of such were false, then the plaintiff cannot recover unless you find it to have been an innocent purchaser, as elsewhere defined in these instructions, viz.:

"1. That the Associated Mill and Elevator Company was a corporation, organized under the laws of Kansas."

In place of that instruction, the court gave the following:

"16. At the time of the sale of stock and giving of the note, the Associated Mill & Elevator Company was a common law trust or 'Massachusetts trust,' and as such was for some purposes a corporation under the constitution and laws of Kansas. It was not false representation if such company was referred to casually or loosely by its agents as a 'corporation.' "

By the instruction given, the court said that the representation that the Associated Mill and Elevator Company was a corporation, if false, was not sufficient to avoid payment of the note. Under section 2 of article 12 of the constitution of the state, stockholders in such a corporation as it was alleged the Associated Mill and Elevator Company had been represented to be, would not be liable for debts of the corporation beyond the amount of stock owned by each stockholder. In *Weber Engine Co. v. Alter*, 120 Kan. 557, this court said:

"Under articles of association in form of declaration of trust, trustees and shareholders are individually liable for the association's debts, notwithstanding attempted limitations of liability."

The association there described was a "Massachusetts trust." The personal liability of the members of a "Massachusetts trust" and the stockholders' liability in a corporation are materially different, so far different that a representation to a prospective purchaser that the organization was a corporation, when in fact it was a "Massachusetts trust," made the representation material; and, if false, it was such a representation as would defeat the note sued on in the hands of one not a holder in due course. The instruction requested should have been given; the one given did not correctly state the law.

2. Complaint is made of the failure of the court to give the following instruction:

"You are instructed that where false representations are made, resulting in inducing a person to execute a note, such person can set up such false representations as a defense, even though the party making such false representations believed the same to be true at the time of making them."

In place of that, the court gave the following:

"If the agents of the company in disposing of stock to the defendant made any one or more of the foregoing ten representations, and if such representations were at the time untrue, and if such agent or agents knew at the time that such representation was untrue, or made such representation, in reckless disregard of its truth or falsity, and if the defendant relied upon such representation and purchased the stock in the company and gave his note on the strength of such representation, and would not have done so had he known the truth concerning which the representation was false, then you should find that such note was obtained by false representation and plaintiff could not recover unless it bought the note in good faith as stated in instruction 6."

Is it necessary that one making a false representation know that the representation is false or that the representation shall be made in reckless disregard of its truth before one making the representation is liable therefor? On this question this court said in *Roome v. Petroleum Co.*, 111 Kan. 633, 208 Pac. 255:

"Damages caused by a representation, false in fact, but believed to be true by the one making the representation, may be recovered if made to induce the damaged person to part with his money or property, where the representation is made without actual knowledge of its truth or falsity."

The court further said:

"False representations, if they result in damage to the person to whom they are made, are injurious whether made through honest or dishonest motives, and the damage sustained can be recovered if the representations are made with the intention of inducing the injured person to part with his money or property." (p. 635.)

Other cases are there cited to support the rule there stated. The instruction requested should have been given.

3. The defendant complains of the failure of the court to give the following instructions:

"You are instructed that if the bank, through its board of directors, was interested in and took part in the promotion of the Associated Mill and Elevator Company by inducing other persons to purchase stock therein and by assisting in the sale thereof, then said bank will be presumed to know what statements and representations were being made by its associates in the matter of the promotion of the sale of such stock.

"You are instructed that if, for the purpose of procuring the account of Associated Mill and Elevator Company, the plaintiff bank, through its directors or officers, or both, made any arrangement with said Associated Mill & Elevator Company, whereby said company should turn said account to said bank in consideration of said bank assisting or lending its influence to the promotion of the sale of stock of said company, then such bank will be presumed to know what representations were being made by those associated with it in carrying out such scheme."

No instruction was given covering the issues embraced in this request. The bank by its contract with the Associated Mill and Elevator Company interested itself in building the elevator and was to be benefited during its construction; and there was evidence which tended to prove that the bank would profit through the successful completion of the enterprise. In *Farmers State Bank v. Brenneke,* 118 Kan. 251, 255, 240 Pac. 395, the court said:

"It does not appear that the plaintiff bank received any benefit resulting from the fraud, if there was any, practiced on the defendant by those who procured the execution of the notes. If the plaintiff's cashier made representations to the defendant concerning the purchase of the shares in the mill and elevator company, the plaintiff would not be liable unless it received benefit therefrom."

If the bank took part in promoting the business of the Associated Mill and Elevator Company, out of which the bank was to be benefited, and if it loaned its influence to promote the sale of the stock of the company, the bank should not recover on a note given where it was obtained by false representations. If either of these requested instructions had been given, the verdict might have been other than it was and the answers to the questions submitted might have been materially different. They should have been given.

The judgment is reversed, and a new trial is directed.