No. 30,105.

THE ARMOURDALE STATE BANK, *Appellee*, v. THE HOMELAND INSURANCE COMPANY OF AMERICA, *Appellant*.

(5 P. 2d 786.)

Opinion filed December 12, 1931.

*Ralph T. O'Neil, John D. M. Hamilton, Barton E. Griffith,* all of Topeka, and *C. A. Bowman,* of Kansas City, for the appellant.

*J. H. Brady* and *N. E. Snyder,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This was an action to recover on a fire insurance policy.

On and prior to October 25, 1927, the plaintiff was the owner of a farm in Anderson county. On that date it sold and conveyed the property to Goldie M. Ford and Robert E. Ford, at which time the

grantees executed a mortgage for $5,000 to the plaintiff as a part of the purchase price. The mortgage was prepared by J. W. Burke, assistant cashier of the bank, part of which was in his handwriting, and the execution of the mortgage was acknowledged before him as notary public. He collected at least a part of the interest as it accrued on the mortgage. On March 1, 1928, the defendant, upon application of the Fords, issued a farm policy insuring for one year to the extent of $3,000 the house located on the farm against fire. A mortgage clause was attached to the policy in favor of the plaintiff, and the plaintiff paid the premium and held the policy in its possession. The pertinent parts of the mortgage clause are as follows:

"NATIONAL BOARD STANDARD MORTGAGE CLAUSE.

(With contribution.)

"Loss, if any, payable to The Armourdale State Bank, as mortgagee (or trustee) as such interest may appear.

"This policy, as to the interest therein of the said payee, as mortgagee (or trustee) only, shall not be invalidated by any act or neglect of the mortgagor or owner of the within-described property, nor by the commencement of foreclosure proceedings, nor the giving of notice of sale relating to the property, nor by any change in the interest, title or possession of the property, nor by any increase of hazard; . . . and provided, further, that the mortgagee (or trustee) shall notify this company of the commencement of foreclosure proceedings, and of any notice of sale relating to the property, and of any change of ownership or occupancy, or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, the same shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for any increased hazard; . . .

"Failure upon the part of the mortgagee (or trustee) to comply with the foregoing obligations shall render the insurance under this policy null and void as to the interest of the mortgagee (or trustee)."

On October 20, 1928, the Fords traded the real estate in question for property in Argentine and on that date executed their warranty deed conveying the property to Elsy Middleton. The deed was prepared by a lawyer and acknowledged before J. W. Burke on October 29, 1928. On November 7, 1928, J. W. Burke obtained the insurance policy out of the files of the bank, prepared an assignment of interest thereon and procured the signatures thereto of Goldie M. Ford and Robert E. Ford, and retained the policy. J. W. Burke and H. H. Daniels were the active officials in the bank. The property described in the policy was destroyed by fire on January 8, 1929. The company was not notified of the transfer of the prop-

erty until after the fire. The jury returned a general verdict in favor of the plaintiff and answered the following special questions:

"1. Did the plaintiff bank have possession of the insurance policy sued upon in this case prior to the date the dwelling was destroyed by fire? A. Yes.

"2. If you answer the foregoing question in the affirmative, state the approximate time the bank had possession of the policy. A. From date of issue.

"3. Was J. W. Burke an active officer of the plaintiff bank between October, 1928, and February, 1929? A. Yes.

"4. Did J. W. Burke acknowledge the conveyance from Goldie M. Ford and Robert E. Ford to Elsy Middleton dated October 20, 1928? A. Yes.

"5. Did J. W. Burke assist in preparing the assignment of interest from Goldie M. Ford and Robert E. Ford to Elsy Middleton, dated November 7, 1928? A. Yes.

"6. Did the plaintiff, the Armourdale State Bank, have knowledge, by any duly authorized officer, that the insured property in this case was transferred from Fords to Middleton before the property was destroyed by fire? A. No."

The verdict was returned June 12, 1930, and a judgment entered for the plaintiff in accordance with the general verdict. A motion for a new trial and a motion for a judgment on the special findings were filed on the 14th of June, 1930. On December 6, 1930, which was a regular day of the December, 1930, term of the court, the motion for new trial and the motion for a judgment on the special findings came on for hearing and were by the court overruled. The notice of appeal was served January 15, 1931, and recites that the plaintiff appeals to the supreme court of Kansas from the order and judgment entered in said cause on the 6th day of December, 1930, overruling defendant's motion for a judgment on the special findings and overruling defendant's motion for a new trial.

The appellee challenges the appellant's right to be heard in this court on assignment of error number five, which is:

"Court erred in overruling defendant's motion for judgment on the special findings."

The verdict was returned and judgment entered on June 12. The motion for a judgment on the findings was filed June 14, but was not heard by the court until a subsequent term thereof, and on December 6, 1930. The appellee advances the theory that since a judgment was entered on June 12 and the motion for a judgment on the special findings was not filed until June 14 and not heard until the December term, the court was without jurisdiction at the time the motion was heard to render a judgment on the special findings, which would have the effect of setting aside the general verdict and judgment entered. The statute provides that the court shall, when

requested by a party to the case, direct the jury to find upon particular questions of fact, and when the special findings of facts are inconsistent with the general verdict the former controls the latter, and judgment should be entered in accordance with the special findings. (R. S. 60-2918; *Tacha v. Railway Co.*, 97 Kan. 571, 155 Pac. 922.) There is no express provision in the code for a motion for a judgment on the special findings. A motion, however, is a proper procedure to obtain an order of the court. (R. S. 60-720.) The court's attention must in some manner be called to the inconsistency in the verdict, if it exists, and this is a proper function for a motion and is fairly implied in the statute. If such motion is timely filed, and the filing of such motion with the motion for a new trial is timely, it is sufficient to preserve the question for the further consideration of the court and may be considered and passed upon at a subsequent term of the court, notwithstanding the court's ruling thereon may have the effect of setting aside the general verdict and the formal judgment entered by the clerk. (R. S. 60-3117.)

We hold, therefore, that the court had jurisdiction to consider and decide the motion for a judgment on the special findings on December 6, 1930, and that the order denying the same is properly before this court for review.

The appellant contends that the court erred in denying the motion for a judgment on the special findings, notwithstanding the general verdict.

The obligations of the parties are defined in the contract or policy. By the terms of the mortgage clause the appellant obligated itself to pay the appellee, in event of loss, as its interest appeared in the property, and no act or neglect of the mortgagor invalidated this obligation, provided the mortgagee should notify the appellant of any notice of sale relating to the property, or any change of ownership "which shall come to the knowledge of said mortgagee." Failure of the mortgagee to perform its part of the obligation invalidated the policy.

The issue before the trial court, which was submitted to the jury, was whether the appellee had knowledge of the transfer of the property before the fire. The undisputed and established facts are, that J. W. Burke was the assistant cashier and an active officer of the appellee; that he prepared the mortgage given by the Fords to the bank and as notary public took their acknowledgment of the execution thereof and collected interest accruing thereon; that the

land was conveyed by the Fords to Elsy Middleton, and J. W. Burke as notary public took their acknowledgment of the execution of the deed on October 29, 1928; that the insurance policy from the date of its issuance was in the custody and control of the bank and on the 7th of November, 1928, Burke assisted in preparing the assignment of interest from Goldie M. Ford and Robert E. Ford to Elsy Middleton. The appellant was not notified of the change of ownership until after the loss, which occurred January 8, 1929.

Can it be said that the bank had knowledge of the transfer of the property and failed in its obligation to notify the appellant? Its obligation was to convey to the appellant any notice of sale which came to its knowledge. The appellant prepared the policy and must be held to have chosen the language advisedly and to have used the word knowledge as distinguished from constructive knowledge. Appellee must have had actual knowledge of the sale of the property or exchange of ownership before it can be charged with failure to notify the appellant and thus work a forfeiture of the policy.

In *Dunlap v. Denison,* 83 Kan. 757, 112 Pac. 598, this court held:

"Actual notice and knowledge are not always synonymous. Upon proof of sufficient facts the law will presume that a party has information equivalent in its legal effects to actual knowledge." (Syl. ¶ 1.)

In the opinion in the case of *Stanley v. Indemnity Association,* 112 Kan. 412, 416, 210 Pac. 1096, this court said:

"On general principles, a knowledge which would be sufficient to lead any prudent person to inquire about the matter, when it could easily be ascertained, ought to be regarded as a knowledge of the fact."

The rule with reference to knowledge which the law attributes to a person from the knowledge of certain facts is well stated in 20 R. C. L. 346, section 7:

"Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts. A person has no right to shut his eyes or his ears to avoid information, and then say that he had no notice; he does wrong not to heed the 'signs and signals' seen by him. It will not do to remain willfully ignorant of a thing readily ascertainable. It has been said that want of actual knowledge in such a case is a species of fraud. The rule has sometimes been said to be that whatever puts a person

on inquiry amounts, in judgment of law, to notice, provided the inquiry becomes a duty, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding. It has also been said that wherever inquiry is a duty, the person bound to make it is affected with knowledge of all which he would have discovered had he performed the duty. Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself."

In this case the assistant cashier knew of the existence of the deed, its execution and the assignment of the policy. With knowledge of these facts he cannot be heard to say that he did not have any notice of sale, for these facts would lead any prudent person to the conclusion that there had been a transfer of the property. It is suggested that he was under no duty to make inquiry when in possession of these facts to learn the ultimate fact of the transfer of the property. He was an active officer of the bank and knew that the bank held a mortgage on the property and a policy of insurance. This imposed a duty on him—if the knowledge which he possessed did not fully inform him that there was a transfer of the property—to make inquiry and ascertain the ultimate fact.

The jury found that the bank did not have knowledge through any authorized officer that the insured property was transferred. The answer to question number six adds nothing to the general verdict. It is not a finding of a particular fact, but is, in effect, a conclusion which is not supported by the particular facts found. Burke was the assistant cashier and an active officer of the bank. Any knowledge which he possessed was knowledge to the bank itself. A bank can only acquire knowledge through its officers, managers and agents, and what they actually know is the knowledge of the bank. Notice to an agent may not in all cases charge the bank with knowledge, but where the managing officer of the bank has actual knowledge such knowledge is imputed to the bank. (*Farmers State Bank v. Rueschhoff*, 121 Kan. 784, 250 Pac. 335.)

We conclude that the court erred in denying appellant's motion for a judgment on the special findings, and it is directed to sustain the motion and enter judgment for the appellant for costs.