No. 30,385.

J. E. Lutz, *Appellee,* v. The Peoples State Bank of Minneola, *Appellant.*

(9 P. 2d 997.)

Opinion filed April 9, 1932.

F. C. Price, Floyd M. Cossman, both of Ashland, Charles Rooney, of Topeka, and Howard Rooney, of Dodge City, for the appellant; Clad Hamilton, Donald A. Campbell and Frank Flack, all of Topeka, of counsel.

Chester I. Long, Claude I. Depew, W. E. Stanley, all of Wichita, and Carl Van Riper, of Dodge City, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This was an action to recover the amount of an accommodation note from the beneficiary. The plaintiff prevailed, and the defendant appeals.

The defendant is, and was for many years prior to the transaction involved in this case, a banking corporation at Minneola, Kan., James McAdam was its president and Alva E. Moore was its cashier and principal managing officer, although McAdam was in full charge of the bank in the absence of Moore.

The daily statement of the bank on Saturday, May 5, 1928, shows that its deposits were $63,828.26; that it had only $1,164.54 in cash, and deposits in its correspondent banks as follows: Exchange National Bank of Hutchinson, $56.15, and Commercial National Bank of Kansas City, $43.37; First National Bank of Great Bend, overdraft, $963.11. It was, in fact, approximately $8,000 short in the required reserve. The daily statement of Monday, May 7, 1928, shows a deposit under the name of James McAdam, written over an erasure and under the heading of First National Bank of Great Bend, in the amount of $15,000; a balance in the Great Bend bank of $9,438.05, and under the head of general credits, Commercial National Bank, $5,952.26, and transfer, $6,000. The cashier's explanation of this statement was to the effect that McAdam represented to him that he was going to raise $15,000 for the credit of the bank and would deposit it with the Great Bend bank, and, relying on this statement, he made the entry; that he took credit for a return draft of $18 and a remittance of foreign checks in the amount of $1,-731.62, and charged the Great Bend bank with other items in small amounts amounting to $348.46. This, together with the overdraft, the transfer item and the balance shown in the Great Bend bank, accounts for the distribution of the $15,000. The item of $5,952.26 was drafts drawn on the Commercial National Bank of Kansas City, and the $6,000 item purported to be a transfer of that amount from the Great Bend bank to Kansas City to cover these drafts. This transfer was never made. The $15,000 did not in fact come into the bank, and consequently the distribution as shown in the daily statement was without foundation. It had the effect, however, of showing the bank in a substantial condition on the face of the statement.

On the morning of May 9 McAdam called on the plaintiff, a personal friend and a farmer living near Minneola, and asked him, according to the testimony of the plaintiff, which appears to have been accepted by the jury, to sign an accommodation note for the use and benefit of the bank, stating that the bank would take care of the note as soon as the wheat came in from the harvest, and that the bank was in good circumstances. The note was written by McAdam and signed by the plaintiff. McAdam took the note to the Great Bend bank, and, under an arrangement which this bank had with the defendant, the note was rediscounted and the proceeds thereof credited to the account of the defendant in the Great Bend bank. On that day the Great Bend bank mailed a card to the defendant showing a credit, "J. E. Lutz note, $15,000," and debit, "Wallace Boucher note, $4,000, remittance federal reserve, $6,240.45." The remittance was a transfer directed by the officers of the defendant to the Commercial National Bank of Kansas City for the purpose of clearing checks and drafts drawn on the defendant. The Boucher note was a rediscounted note held by the Great Bend bank and there was a conflict in the evidence as to whether this was defendant's liability or a personal liability of McAdam. On the same day the defendant requested the Great Bend bank to transfer an additional $5,500 to the Kansas City bank. On the completion of this transaction the $6,000 transfer item shown on the daily statement of the defendant was on May 10 charged back on the other side of the ledger and Moore's explanation is, "I took it out when there wasn't any more reason to pad the account." Remittances from other sources were made to the Great Bend bank during this time, and Moore testified that on the 9th and 10th of May the bank had ordered transferred to their Kansas City correspondent $14,500, and that the deposit in the Great Bend bank was on May 10 reduced to $568.78. On May 7, 1928, McAdam's account in the defendant bank was credited with $15,000, and on May 10 it was charged with $2,500 and $1,502.50, which appears to be the only checks or drafts in which McAdam had any interest that were paid through the transfer of the money from the Great Bend bank to the Kansas City bank. There is no evidence that McAdam had any express authority to negotiate the loan in question for the use of the bank, other than such authority as he might have by virtue of his office. The accommodation note was renewed from time to time, but

before the filing of this suit the plaintiff paid the Great Bend bank the full amount thereof, including interest.

The issues were framed and the case tried on the theory that the bank received the full use and benefit of the proceeds of the transaction and by reason thereof was liable to the plaintiff for the amount of the note. The question to be determined by the trial court was, Who received the benefit of the transaction? The jury returned a general verdict in favor of the plaintiff, and answered special questions as follows:

"1. Did the defendant bank secure and retain the proceeds of the note in question? A. Yes.

"2. If you answer question No. 1 in the affirmative, state in what manner and to what extent. A. By $11,000 cash and a $4,000 note.

"3. Was any portion of the $15,000 credit given James McAdam in the defendant bank by said bank on May 7, 1928, used by said defendant bank to honor checks of said James McAdam on said account before the $15,000 was deposited to the credit of the defendant bank in the Great Bend bank? A. No.

"4. Did James McAdam have any authority from the defendant bank to consummate the transaction in question? A. Yes.

"5. If you answer the foregoing question in the affirmative, state what the authority was. A. As president and by plaintiff's exhibit No. 1."

There is no room for controversy over the principles of law controlling this lawsuit. Banks are responsible for their conduct and are liable for the wrongs which they commit and the injuries which they cause. A bank cannot be held liable for the unauthorized transactions of its officers, unless it actually receives and retains the benefit of such transaction. If, however, it receives and appropriates the benefit of a transaction it cannot escape liability on the ground that the officer acted without authority. If the note was given solely for the accommodation of the bank and the bank received and appropriated the benefit of the transaction, it is liable independent of any promises made by its president, and the appellee had the right to maintain this suit to compel the bank to take care of its obligation. (*Means v. Bank,* 97 Kan. 748, 156 Pac. 701; *Saylors v. Bank,* 99 Kan. 515, 163 Pac. 454; *Bank v. Wilson,* 101 Kan. 72, 165 Pac. 859; *Humpert v. Citizens State Bank,* 122 Kan. 101, 250 Pac. 1077; *Johnson v. Schrag,* 134 Kan. 80, 4 P. 2d 450.) We do not understand that the appellant questions these well-established principles of law. Its contention is that because of certain error in the admission and rejection of testimony, and the

refusal to submit certain special questions and certain instructions to the jury, the appellant did not have a fair trial of the issues involved, and asks that the judgment be reversed. We shall attempt to review the assignments of error in the order in which they are presented.

It is contended that the court excluded testimony and limited the appellant in its cross-examination of the appellee's witnesses. Our attention is called to the cross-examination of the cashier of the Great Bend bank in which he was asked concerning the usual custom of banks, which, under the circumstances of this case, we think, was wholly immaterial. He was further asked whether McAdam had an account in the Great Bend bank. The court sustained this · objection. In the abstract of the cross-examination of the witness, however, we find this statement: "The Minneola bank had a deposit in our bank at that time and James McAdam did not." This clearly indicates that the witness did answer a similar question which answers this contention, unless there was an attempt to distinguish between deposit and account, which the context of the cross-examination does not indicate.

It is also contended that the court erred in excluding checks drawn by McAdam on the appellant after May 10, 1928. These checks might properly have been admitted, but in view of the fact that McAdam's ledger sheet showing his account from March 16, 1928, to and including June 8, 1928, was in evidence, which showed the date the checks were paid and the amount thereof, the appellant was not prejudiced by the exclusion of this evidence. It is also complained that the court erred in sustaining an objection to a question propounded to the witness Moore as to why he did not transfer the $6,000 item. The record clearly indicates that this item was nothing more nor less than a book entry; that he had at no time intended to make the transfer and did not make the transfer. His explanation appears to have been quite fully gone into, and the reason he did not make the transfer is apparent. Other contentions are made that the court erred in the admission and exclusion of evidence and that it unduly limited the cross-examination of appellee's witnesses. These have been considered and found to be without merit. We fully realize that in the trial of a case of this nature, involving transactions between banks, which necessarily includes many records of the bank, it is difficult to determine just where the line should be drawn in the examination of witnesses,

and the extent that records should be admitted in evidence. The trial court is vested with discretionary power in these matters, and unless there is an apparent abuse of judicial discretion this court will not disturb its ruling. (*Harmon v. Theater Co.*, 111 Kan. 252, 206 Pac. 875.)

It is next contended that the court permitted improper testimony on rebuttal. The court could very properly have excluded a part of the testimony offered on rebuttal. There appears to have been an attempt on the part of the appellee to impeach the appellant's witnesses on collateral matters elicited on cross-examination. This should not have been permitted. (*State v. Alexander*, 89 Kan. 422, 131 Pac. 139.) Our examination of the record has led us to the conclusion that, under the circumstances of this case, the admission of this testimony, while erroneous, was not reversible error.

The appellant requested the submission of ten interrogatories to the jury, and contends that the court erred in its failure to submit these interrogatories. Interrogatories numbered one and two requested by the appellant, we think, are sufficiently included in questions numbered four and five submitted to the jury. Requested interrogatories numbered six, seven and ten relate to the deposit of the $15,000 in McAdam's account in appellant bank and when checks were honored on this account. We think these questions are sufficiently covered in interrogatory number three submitted to the jury. This interrogatory, on its face, concedes that the $15,000 credit was made in McAdam's account in the appellant bank, and the jury is asked whether the bank honored checks on this account before the $15,000 was deposited to its credit in the Great Bend bank. The jury finds that none were honored, and this appears to be in accordance with the ledger sheet offered in evidence by the appellant showing McAdam's account. In requested interrogatory number five, the jury was asked who the managing officer of the defendant bank was in May, 1928. This question might properly have been submitted to the jury. There does not appear, however, to be much controversy on this point and any answer the jury may have made to it would not have affected the general verdict.

Requested interrogatory number eight is:

"Did said James McAdam check out the sum of fifteen thousand dollars ($15,000) for his own use and benefit from his private account in the defendant bank between the dates of May 9, 1928, and May 23, 1928?"

The refusal to submit this interrogatory presents a more serious question. The record shows that the $15,000 deposit made in the McAdam account was drawn out of the bank between the dates stated. The jury would have been fully warranted in answering this question "Yes." Would such an answer have affected the general verdict? If so it was error for the court to refuse to submit the interrogatory. The issue which the jury had for consideration was, Who received and appropriated the benefit of the transaction, and to whom did the appellee loan his credit? If the appellant was the recipient of the fruits of the transaction, it is of no consequence what it permitted McAdam to do with the money after it was appropriated to its use. It appears from the record that on May 7, after the deposit was made in the Great Bend bank, on the order of the appellant $11,740.45 was transferred to its corre-· spondent bank in Kansas City. This and the $4,000 note charged against the account practically exhausted the proceeds of appellee's note. Moore testified that on the 9th and 10th a total of $14,500 was transferred to the Kansas City bank and that McAdam was only interested in two items in the transaction, totaling $4,002.50, and one of these, a $2,500 item, had been carried by the bank since April 20, 1928. The deposit enabled the bank to meet its demands and pay the checks of its depositors. It received the immediate and primary benefits of the transaction. The general verdict established the fact that the appellee loaned his credit to the bank. Under such circumstances what McAdam did with his account was of no consequence, and it was not error to refuse to submit the question.

The appellant criticizes instructions given and contends that the court erred in instructions refused. We have made a careful examination of the instructions given by the court, as well as the instructions refused. The court concisely stated the issue in the case and instructed the jury that the burden was on the appellee to establish that he gave his note without consideration for the accommodation of the appellant; that the appellant received the use and benefit of the proceeds of the note and appellee was compelled to pay the note. On the other hand, if the jury found that the transaction was for the benefit of James McAdam or that he was the accommodated party, the appellee could not recover. The appellant seriously objects to instruction number five, in which it is

stated, "If you find from the evidence that the note in question was made payable to the defendant bank," contending that there is no evidence warranting the court's submission of this question. There is force to the criticism and the instruction should not have been given, but, when read in connection with other instructions given by the court, we find that it was not prejudicial error.

It is next contended that the court erred in overruling a motion for a directed verdict. It is argued that under all of the evidence in this case the transaction was the usual and ordinary way of handling a deposit made by the patron of a bank in its correspondent bank. We cannot agree with this argument. It is clear to this court that the bank was in an unsound condition on May 5, 1928. Moore said: "The bank was in a pretty shaky condition." The daily statement of Monday, May 7, showed the bank to be in a substantial condition. The reason for this change is the anticipated deposit of $15,000 to the credit of appellant in the Great Bend bank. Moore testified: "The utilization of the $15,000 proposition changed the bank from in bad shape to a bank that had its reserves fully met." This deposit was necessary to enable the bank to meet the drafts drawn on its Kansas City correspondent and without this credit the bank would have been compelled to turn down the checks of its depositors. The deposit was made and the money used by the bank in the payment of its depositors. The appellee testified to the effect that he loaned his credit to the bank and not to McAdam. This presented questions of fact for the jury to determine and we think the evidence was sufficient to support the finding that the bank was the accommodated party, and that it received the fruits of the transaction and appropriated it to its own use. Under such circumstances the appellant cannot escape liability.

The judgment is affirmed.