No. 32,449

THE STATE OF KANSAS, *Appellee*, v. PAUL PFEIFER and FRANK PFEIFER, *Appellants*.

(56 P. 2d 442)

*John R. Parsons* and *W. H. Wagner,* both of Wakeeney, for the appellants.

*Clarence V. Beck,* attorney general, *Theo. F. Varner,* assistant attorney general, and *C. E. Birney,* county attorney, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal by two defendants from convictions of misdemeanors.

Two brothers, Frank and Paul Pfeifer, were charged and tried jointly on three counts. They were acquitted on the third count, and it is not involved in this appeal. In the first count they were charged with simple assault and in the second count with disturbing the peace of one Dreiling, a Catholic priest. Paul was convicted on both counts and Frank was convicted only of disturbing the peace.

A contention which applies to Frank alone is, there was no evidence to support his conviction. This contention requires analysis only of the evidence which tends to support the verdict.

A reading of the record discloses that ill feeling existed between defendants and the priest prior to the particular incident here involved. It appears that at least part of the bad feeling arose concerning the financing of public and parochial schools. The immediate occasion for the instant trouble apparently concerned an announcement by the priest on this Sunday morning that a wedding ceremony of defendants' brother Mike would not occur on the scheduled date. Whether the defendant, Frank, was guilty of a disturbance of the peace cannot be satisfactorily answered by an attempt to completely separate his conduct from that of his brother Paul. Defendants went to the rectory together. It is clear the joint excursion was not prompted by friendly motives on the part of either of the defendants. The disturbance occurred on a Sunday following church services. The priest was in the rectory and in conference with defendants' father and the son Mike concerning Mike's marriage ceremony.

One witness testified: he saw defendants drive to Father Dreiling's house, and that before the car stopped they had both doors open; they got out and walked as fast as they could straight into the father's house; as far as he could see, they did not knock; after they came out he saw both defendants waving their arms.

The priest testified, in substance: *"They* rushed in, savage-like;

defendants were together; *they* did not knock; Paul cursed, and I asked them to leave; *they* refused; Paul said, 'No, *we* are not going out; *we* are going to settle that today.' I told the girl (the housekeeper) to get the sheriff; defendants' father told them everything was settled; that he and I had agreed; their father asked them to leave, but they refused."

Defendants' father testified: "While the priest was pushing Frank out, Frank caught hold of the priest's shirt." Frank testified he was going to leave the rectory when he got ready; when the priest shoved him out he grabbed hold of some of his clothes and part of his body in order to keep from falling. Paul testified: "Frank was the man who tore the priest's shirt."

It is unnecessary to relate the details concerning the cursing by the defendant, Paul, and the encounter which ensued between the defendants and the priest. That the evidence disclosed an assault by Paul is not disputed. His contention is that his conduct was in self-defense. Defendants both insist they had a right to be in the rectory, for the reason that was not only the priest's parsonage home, but a place where the business of the church was transacted. The gist of the charge, however, is not the character of the building, but the conduct of defendants. The business feature of the place did not justify the conduct of either defendant. Had the building been devoted exclusively to the business of the church, the acts and demeanor of both defendants nevertheless clearly constituted a disturbance of the peace. The conduct of defendants was highly unbecoming on any day. Especially did it constitute a disturbance of the peace on a day dedicated to religious worship, peace and quiet.

The defendant, Paul, contends the trial court erred in admitting evidence on his cross-examination over objection concerning the commission of unrelated offenses other than that with which he was charged. He was asked whether he had broken into a store and stolen some merchandise. When his counsel objected to the question, defendant spurned the protection of his lawyer, and said, "That's all right." He then admitted the offense. The offense had been committed about twenty years ago. Defendant now insists the admission of the evidence was error. Evidence was also admitted on cross-examination, over objection, concerning several fights he had about eleven years ago. It is contended this constituted error. In support of the contention we are referred to *State v. Reed,* 53 Kan. 767, 37 Pac. 174, and *State v. Kirby,* 62 Kan. 436,

63 Pac. 752. The cases are not in point. In the Kirby case a witness, defendant's wife, and not the defendant, was cross-examined, and over objection required to testify concerning other unrelated offenses of the defendant. In the Reed case the defendant did not insist upon answering a question which this court held to have been improper cross-examination. Cases in which other witnesses than defendant testified, either on direct or cross-examination, concerning defendant's previous conduct, have no application whatever to cases involving the cross-examination of a defendant who offers himself as a witness.

A defendant, when questioned in good faith, may be cross-examined with a view of impairing his credibility, concerning previous offenses and subjects involving him in degradation and disgrace, although they do not pertain to the charge for which he is then on trial. (*State v. Pfefferle*, 36 Kan. 90, 12 Pac. 406; *State v. Probasco*, 46 Kan. 310, 26 Pac. 749; *State v. Killion*, 95 Kan. 371, 148 Pac. 643; *State v. Bowers*, 108 Kan. 161, 194 Pac. 650; *State v. Roselli*, 109 Kan. 33, 198 Pac. 195; *State v. Bolton*, 111 Kan. 577, 207 Pac. 653; *State v. Patterson*, 112 Kan. 165, 210 Pac. 654; *State v. Smith*, 114 Kan. 186, 217 Pac. 307; *State v. Shanahan*, 114 Kan. 212, 217 Pac. 309.)

The extent of cross-examination touching the credibility of a defendant in a criminal action rests in the sound discretion of the trial court. (*State v. Pfefferle*, supra; *State v. Rhoades*, 113 Kan. 455, 215 Pac. 291; *State v. Shanahan*, supra; *State v. Winters*, 120 Kan. 166, 241 Pac. 1083; *State v. Nossaman*, 120 Kan. 177, 243 Pac. 326; *State v. Reuter*, 126 Kan. 565, 268 Pac. 845; *State v. Gibson*, 131 Kan. 570, 292 Pac. 931; *State, ex rel., v. Christensen*, 132 Kan. 192, 294 Pac. 892.)

In the instant case, as stated, defendant, Paul Pfeifer, insisted upon answering the question concerning the remote and unrelated offense. Having taken that position, he will not now be heard to complain the trial court abused its discretion in permitting him to do so. Concerning defendant's cross-examination of his more recent conduct, his fights with other parties, there was no abuse of discretion. They were less remote, of similar character to the charge on trial, and tended to disclose his inclination toward such conduct.

It is further insisted by the defendant, Paul Pfeifer, the state was bound by his answer concerning a purely collateral subject. That is correct, and the state would not have been permitted to contradict

such answer by the testimony of other witnesses. (*State v. Alexander*, 89 Kan. 422, 131 Pac. 139; *State, ex rel., v. Stout*, 101 Kan. 600, 168 Pac. 853; *Tersina v. Insurance Co.*, 102 Kan. 87, 169 Pac. 559; *Lutz v. Peoples State Bank*, 135 Kan. 115, 9 P. 2d 997.)

There was no attempt in the instant case to contradict or rebut any denial of the defendant, Paul Pfeifer, concerning his previous conduct by any other witness. All the state did was to cross-examine him more closely after his first denial of a certain fight with a specifically named person. The state was not precluded from pursuing a thorough cross-examination of defendant on that subject.

The defendant, Paul Pfeifer, who was convicted of assault, contends he was entitled to an instruction on self-defense. The contention is without merit. He and his brother did not embark on this mission as peacemakers. They provoked the disturbance and the ensuing assault in the rectory, the parsonage home of the priest. There was evidence they rushed into the rectory and that Paul cursed and used abusive language. His entire attitude was hostile and of a threatening character. This alone constituted a disturbance of the peace. (R. S. 21-950; *State v. Hebert*, 121 Kan. 329, 246 Pac. 507). He was asked to leave the rectory. He refused to withdraw from the disturbance he and his brother had created. The evidence discloses he cursed and shoved his fist into the priest's face and continued to threaten him. A scuffle resulted in the attempt to evict defendants from the rectory. Clearly, the defendants, but especially Paul, began, invited and provoked the affray. He was not entitled to an instruction on self-defense. In *State v. Schroeder*, 103 Kan. 770, 176 Pac. 659, it was held:

"The general rule is that the right of self-defense does not imply the right of attack, and one who is the aggressor and who provokes or brings on an affray in which he kills or inflicts bodily harm to his adversary, *or who produces the occasion which makes it necessary for him to commit homicide or inflict the injury, cannot justify his act on the plea of self-defense.*" (Syl. ¶ 3.) Italics inserted.) See, also, *State v. Ball*, 110 Kan. 428, 204 Pac. 701.

In 1 Wharton's Criminal Law (12th ed.), 828, the rule is stated thus:

" 'A man has not,' as is properly said by Breese, C. J., 'the right to provoke a quarrel and take advantage of it, and then justify the homicide.' Self-defense may be resorted to in order to repel force, but not to inflict vengeance. *Non adsumendam vindictam, sed ad propulsandam injuriam.* 'There is certainly no law to justify the proposition that a man may be the assailant and

bring on an attack and then claim exemption from the consequence of killing his adversary on the ground of self-defense. While a man may act safely on appearances, and is not bound to wait until a blow is received, yet he cannot be the aggressor and then shield himself on the assumption that he was defending himself.' "

In 1 Bishop on Criminal Law (9th ed.), p. 602, it is said:

"If one·has it in his power to avoid the necessity of an allowable self-defense, prudence dictates that he should; for he encounters the collision only at extreme peril. Not that he may not resist an attack, or that he must endanger his safety by playing the coward; but if two paths are open for him, the one leading from a conflict and the other to it, and he chooses the latter, he can escape the penalties of the law only by keeping within its exact lines."

Defendants contend the trial court committed error in the restriction of cross-examination of the priest. This contention pertains to inquiries concerning troubles of the priest at churches he formerly served. They were designed to disclose the priest was a trouble-maker and a disturbing influence. In a lawsuit such as this it would appear this cross-examination was perhaps somewhat unduly restricted. The extent of such cross-examination, of course, rests in the sound discretion of the trial court. In the light of the entire record we are not inclined to disturb the judgment on this ground.

Defendants further contend the trial court erred in an instruction which referred to the rectory as the residence of the priest. The complaint is not well taken. The rectory was the priest's residence. It was the parsonage home provided for him by the church. The fact he also transacted church business there did not deprive it of its residential character. Furthermore, the conduct of defendants supported the charge had the acts occurred in a place reserved exclusively for business purposes.

Other complaints have been noted and considered but are not deemed of sufficient importance to require discussion. They could in no way alter the conclusion reached. The judgment must therefore be affirmed. It is so ordered.